# STATE OF MICHIGAN

# COURT OF APPEALS

---

JAMES R. HOLLAND, JR.,

    Plaintiff-Appellant,

V

STATE FARM MUTUAL AUTOMOBILE
INSURANCE CO,

    Defendant,

and

NORTHVILLE CITY CAR WASH, LLC,

    Defendant-Appellee,

and

JOHN DOE,

    Defendant-Appellee.

---

UNPUBLISHED
September 10, 2015


No. 322438
Wayne Circuit Court
LC No. 13-001676-NI

---

Before: TALBOT, P.J., and WILDER and FORT HOOD, JJ.

PER CURIAM.

  Plaintiff, James R. Holland, Jr., appeals as of right an order granting summary disposition in favor of defendant Northville City Car Wash, LLC.[1]  We affirm.

I

---

[1] Plaintiff's appeal does not involve any of his claims against John Doe, the unidentified driver who was exiting the carwash when plaintiff sustained his injuries.  Additionally, plaintiff has not appealed the trial court's order granting summary disposition in favor of defendant State Farm, which dismissed with prejudice plaintiff's claims against State Farm, and his claims against State Farm are not relevant to this appeal.  As such, we will refer to defendant Northville City Car Wash, LLC, as "defendant," and we do not discuss the allegations or procedural history related to the other defendants.

-1-

This case arises out of the injuries sustained by plaintiff, a letter carrier, when he slipped and fell on a patch of ice on a sidewalk that intersects defendant's driveway during his mail route. For approximately 20 years before the incident, plaintiff walked across the same portion of sidewalk "virtually every day" without slipping and falling. According to plaintiff, "[t]here [were] issues from time to time at this location because . . . ice forms on the sidewalk" where water from cars exiting the carwash, and water from the carwash itself, flows down the driveway. Accordingly, plaintiff typically followed "a sequence of events" when he crossed defendant's driveway: he "walk[ed] up, s[aw] if there's a car there, s[aw] if it's icy, and pick[ed] a path."

On February 6, 2010, the weather was cold and clear. When plaintiff approached the sidewalk that crosses defendant's driveway,[2] he noticed that ice was on the pathway. He followed his usual "sequence of events," but he testified at his deposition that the following events transpired:

> The vehicle that was coming out of the car wash . . . stopped. I was, like, okay, I'm going to pick my path through the ice on the sidewalk, and I noticed out of the corner of my eye that he's pulling forward. I look up and he's looking over his shoulder. . . . [T]he attendant was drying his car. [The driver] was looking over his right shoulder out -- like, looked like he was looking out the back window, and he was going to run into me. I tried to quickly step out of the way. That's when I fell. I had to pull myself backwards to keep him from running over me. He actually did drive over my satchel.

Plaintiff later clarified that he started to cross the driveway after he looked at the vehicle and saw that it was stopped, and he subsequently noticed the movement of the vehicle out of the corner of his eye, observing that the driver "[was] not looking where he's going." Plaintiff explained that he did not stop and wait for the vehicle to pass because he was standing directly in front of the vehicle when the driver was looking over his shoulder.

As plaintiff fell, he twisted his left ankle and collapsed onto his left leg. On the ground, he used his arms to "pull [him]self out because [the vehicle] was still coming forward." The vehicle brushed against plaintiff's arm, but it did not drive over plaintiff. When plaintiff was lying on the ground, the driver of the vehicle looked out his window at plaintiff and "just sh[ook] his head and took off." Plaintiff sustained significant injuries to his left ankle from the fall, which required surgery and other treatment.

At his deposition, plaintiff stated that he did not know when the ice had accumulated on the sidewalk, but he believed that it was the type that "builds up" because he observed layers of ice in one of the photographs marked as an exhibit during the deposition. He also explained that the basis of his claim is that defendant did not attempt to keep the sidewalk free of ice prior to the accident, as he believed that there was no salt in the area when he fell, and the area has been

---

[2] The parties did not dispute whether the sidewalk was part of defendant's premises or a public sidewalk in the trial court.

free of ice since the incident because defendant now salts the area regularly. Additionally, plaintiff acknowledged that he may refuse to deliver mail if he believes that it is unsafe to do so, and that it would have physically possible to cross the street and deliver mail to businesses located on the other side, but "things have to be delivered in a sequence to make sense."

Nehme Jaafar, an employee of defendant, testified at his deposition that he was working at the carwash when plaintiff fell. In the half-hour before the incident, he was "drying [off the cars] and salting." As Jaafar was drying a vehicle outside of the carwash, he observed plaintiff walking toward him on the sidewalk. Jaafar gestured and verbally indicated to the driver of the vehicle that plaintiff was approaching, and the driver came to a complete stop. Jaafar believed that the driver saw plaintiff because he looked at plaintiff, nodded at Jaafar, and gave a "thumbs up" gesture. Additionally, he "kn[e]w that [the driver] wasn't moving" because he had not finished drying the car. Jaafar also indicated that he told plaintiff that he could cross the driveway. He explained that plaintiff started walking while the car was at a complete stop, but plaintiff "got nervous, started moving his foot fast [sic] and slipped." Jaafar stated that plaintiff never crossed in front of the vehicle, and when plaintiff fell on the ground, he was still on the passenger side of the vehicle. Jaafar confirmed that the vehicle left the premises while plaintiff was still on the ground.

During his deposition, Jaafar also acknowledged that water from the carwash crosses the sidewalk and flows down the slope of the driveway into the street, but he testified that the water was not freezing immediately as it washed out of the carwash on the day of the incident because they "had salt, a lot of salt," and they were "instructed to salt every half-hour or if needed." He testified that they put salt "all over the property," including the sidewalk. However, Jaafar testified that he did not remember whether there was ice directly in front of the carwash when plaintiff fell.

On February 4, 2013, plaintiff filed a complaint against defendant in which plaintiff raised a negligence claim and a nuisance claim. As to the negligence claim, plaintiff alleged that (1) defendant owed a duty to plaintiff to clear or remedy hazards of ice and snow on defendant's premises; (2) defendant breached this duty by failing to clear the accumulation of ice or snow on the premises and failing to prevent the unnatural accumulation of ice that was known to develop due to the operation of defendant's business in subfreezing temperatures; (3) defendant's negligent acts or omissions were the legal and proximate cause of plaintiff's injuries; and (4) plaintiff suffered significant injuries due to defendant's negligence. Regarding the nuisance claim, plaintiff alleged that (1) defendant's improper operation and maintenance of its premises—consisting of the slope in the driveway, which causes liquid to drip from the carwash onto the sidewalk and freeze in the winter, and the fact that drips of water from vehicles exiting the carwash accumulate on the sidewalk and freeze in the winter—resulted in a hazardous condition that constitutes a nuisance and poses an unreasonable risk of injury for plaintiff and members of the general public; (2) defendant failed to abate the nuisance despite its knowledge of the condition; and (3) "[a]s a result of [d]efendant's negligent maintenance of the nuisance," plaintiff suffered severe injuries.

On March 4, 2013, defendant filed an answer to plaintiff's complaint and notice of affirmative defenses. Defendant denied that it was liable to plaintiff and requested that the trial court dismiss plaintiff's claims with prejudice. On March 4, 2013, defendant also filed a notice

of affirmative and special defenses. On April 1, 2013, plaintiff filed an answer to defendant's affirmative defenses. Apart from acknowledging that defendant may be entitled to some set-off, plaintiff denied all of defendant's defenses and raised several arguments regarding his claims, which he later reiterated in his response to defendant's motion for summary disposition.

On April 29, 2014, defendant filed a motion for summary disposition. Under MCR 2.116(C)(8) and (C)(10), defendant argued that plaintiff failed to state a claim upon which relief may be granted, and that plaintiff's claims must fail as a matter of law, because plaintiff's negligence claim is meritless due to the fact that an icy condition on a winter day is open and obvious, and plaintiff's allegations of ice on a sidewalk cannot constitute a nuisance. Under MCR 2.116(C)(10), defendant also asserted that it was entitled to summary disposition as a matter of law because there was no genuine issue of material fact that defendant did not owe a duty to plaintiff.

In particular, defendant asserted that it is undisputed, based on plaintiff's deposition testimony and the photographs of the sidewalk taken shortly after plaintiff fell, that "the icy condition as alleged was open and obvious and no special aspects existed as contemplated under Michigan law." Defendant argued that the two exceptions to the open and obvious doctrine under *Lugo v Ameritech Corp, Inc*, 464 Mich 512; 629 NW2d 384 (2001)—i.e., (1) when the open and obvious condition is effectively unavoidable, and (2) when the open and obvious condition presents an unreasonably high risk of severe harm—were not present in this case as a matter of law, citing caselaw indicating that icy conditions are not uniquely or unreasonably dangerous, and noting that plaintiff observed the icy condition "and could have walked around it, over it[,] or even delivered [mail] to the [d]efendant's address at a later time." Additionally, defendant asserted that plaintiff's nuisance claim must fail as a matter of law because ice on a sidewalk as alleged does not constitute a nuisance and, under Michigan law, a nuisance is a condition, not an act or failure to act, and the basis of plaintiff's claim is that defendant did not distribute any salt, or enough salt, on the sidewalk, which is an alleged failure to act. Finally, defendant contended that plaintiff had failed to establish that defendant had actual or constructive notice of the condition, which is a required element of a premises liability claim.

On May 23, 2014, plaintiff filed a response to defendant's motion for summary disposition. Plaintiff conceded that the ice was an open and obvious condition, but argued that the hazardous condition falls under the effectively unavoidable exception to the open and obvious doctrine because plaintiff was required to hurry across the ice while he was "pick[ing] his way through the hazard"—and, therefore, was required to confront the hazardous condition— in order to avoid being struck by a vehicle leaving the carwash. As such, plaintiff argued that the exiting car constituted an extenuating circumstance that made the ice effectively unavoidable under *Hoffner v Lanctoe*, 492 Mich 450; 821 NW2d 88 (2012). Likewise, he disputed defendant's argument that he could have crossed the street to continue delivering the mail or refused to deliver the mail by providing a detailed explanation of his route and explaining why crossing the street was impractical or impossible, such that the condition was effectively unavoidable for "all practical purposes." *Hoffner*, 492 Mich at 468-469.

Plaintiff also asserted that he had stated a viable nuisance claim under *Betts v Carpenter*, 239 Mich 260, 265; 214 NW 96 (1927), *Morton v Goldberg*, 166 Mich App 366, 368-369; 420 NW2d 207 (1988), *Skogman v Chippewa Co Rd Comm*, 221 Mich App 351, 354; 561 NW2d 503

(1997), and *Williams v Dep't of Transportation*, 206 Mich App 71, 73; 520 NW2d 342 (1994), because "[d]efendant created the unnatural accumulation of ice which represents a known and ongoing nuisance" to anyone who walks on the sidewalk. Additionally, plaintiff contended that summary disposition was improper because genuine issues of material fact exist regarding his premises liability claim and his nuisance claim, including whether plaintiff was compelled by extenuating circumstances to cross the hazard, whether plaintiff reasonably feared that the vehicle was about to strike him, whether defendant was negligent, whether defendant took reasonable measures to abate the hazard, and whether the accumulation of ice was natural or unnatural. Finally, plaintiff argued that defendant had notice of the condition in light of the photographic evidence, Naafar's deposition testimony, and the police report from the incident.

On June 3, 2014, the trial court held a hearing on defendant's motion for summary disposition, and the parties presented arguments consistent with those raised in their briefs. The trial court granted defendant's motion "on both counts" and provided the following reasoning: "It is unfortunate that he had the injury to his leg, severe injury to his leg; however, the case law on open and obvious, I mean this is A, daylight; B, it's clear there's ice, cars coming out of the car wash. I mean it's clearly open and obvious." On June 10, 2014, the trial court entered an order granting defendant's motion for summary disposition for the reasons stated on the record and dismissed plaintiff's claims against defendant.

II

This Court reviews de novo a trial court's grant or denial of summary disposition. *Moraccini v Sterling Hts*, 296 Mich App 387, 391; 822 NW2d 799 (2012). Although defendant moved for summary disposition pursuant to MCR 2.116(C)(8) and (C)(10), it is apparent from the trial court's statements on the record that the court considered evidence outside of the pleadings. As such, we review the trial court's decision as though it was made under MCR 2.116(C)(10). *Haynes v Vill of Beulah*, 308 Mich App 465; ___ NW2d ___ (2014) (Docket No. 317391); slip op at 2.

When reviewing a motion for summary disposition pursuant to MCR 2.116(C)(10), this Court may only consider, in the light most favorable to the party opposing the motion, the evidence that was before the trial court, which consists of "the 'affidavits, together with the pleadings, depositions, admissions, and documentary evidence then filed in the action or submitted by the parties.' " *Calhoun Co v Blue Cross Blue Shield Michigan*, 297 Mich App 1, 11-12; 824 NW2d 202 (2012), quoting MCR 2.116(G)(5). Under MCR 2.116(C)(10), "[s]ummary disposition is appropriate if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law." *Latham v Barton Malow Co*, 480 Mich 105, 111; 746 NW2d 868 (2008). "There is a genuine issue of material fact when reasonable minds could differ on an issue after viewing the record in the light most favorable to the nonmoving party." *Allison v AEW Capital Mgt, LLP*, 481 Mich 419, 425; 751 NW2d 8 (2008). "This Court is liberal in finding genuine issues of material fact." *Jimkoski v Shupe*, 282 Mich App 1, 5; 763 NW2d 1 (2008).

III

Plaintiff first argues that the trial court erred in granting summary disposition with regard

to his premises liability claim because there were, at a minimum, genuine issues of material fact regarding whether the facts of this case fall under the effectively unavoidable exception to the open and obvious doctrine.[3]  We disagree.

"A plaintiff who brings a premises liability action must show (1) the defendant owed [him] a duty, (2) the defendant breached that duty, (3) the breach was the proximate cause of [his] injury, and (4) [he] suffered damages." *Bullard v Oakwood Annapolis Hosp*, 308 Mich App 403, 408; 864 NW2d 591 (2014) (quotation marks and citation omitted).  "The duty owed to a visitor by a landowner depends on whether the visitor was a trespasser, licensee, or invitee at the time of the injury." *Id*. (quotation marks and citation omitted).  The parties do not dispute that plaintiff was an invitee on defendant's premises.

> With regard to invitees, a landowner owes a duty to use reasonable care to protect invitees from unreasonable risks of harm posed by dangerous conditions on the owner's land.  Michigan law provides liability for a breach of this duty of ordinary care when the premises possessor knows or should know of a dangerous condition on the premises of which the invitee is unaware and fails to fix the defect, guard against the defect, or warn the invitee of the defect.  [*Hoffner*, 492 Mich at 460 (footnote omitted).]

However, "[t]he possessor of land 'owes no duty to protect or warn' of dangers that are open and obvious because such dangers, by their nature, apprise an invitee of the potential hazard, which the invitee may then take reasonable measures to avoid." *Id*. at 460-461.  Here, the parties do not dispute that the ice on which plaintiff slipped and fell was open and obvious.  Accordingly, the viability of plaintiff's premises liability claim turns on whether the claim includes "special aspects" and, therefore, falls under the "limited exception to the circumscribed duty owed for open and obvious hazards," which allows "liability [to] be imposed . . . for an 'unusual' open and obvious condition that is 'unreasonably dangerous' because it 'present[s] an extremely high risk of severe harm to an invitee' in circumstances where there is 'no sensible reason for such an inordinate risk of severe harm to be presented.' " *Id*. at 462 (second alteration in original).

There are only two types of situations when the special aspects of an open and obvious hazard may give rise to liability:

> [(1)] when the danger is *unreasonably dangerous* or [(2)] when the danger is *effectively unavoidable*.  In either circumstance, such dangers are those that "give rise to a uniquely high likelihood of harm or severity of harm if the risk is not avoided" and thus must be differentiated from those risks posed by ordinary conditions or typical open and obvious hazards.  Further, we have recognized that neither a common condition nor an avoidable condition is uniquely dangerous. . . . [*Id*. at 462-63 (footnotes omitted).]

---

[3] Because we find that the trial court granted summary disposition under MCR 2.116(C)(10), we need not consider plaintiff's argument that plaintiff stated a claim upon which relief may be granted, such that summary disposition was improper under MCR 2.116(C)(8).

Specifically regarding effectively unavoidable hazards, the Court stated:

> The "special aspects" exception to the open and obvious doctrine for hazards that are effectively unavoidable is a *limited* exception designed to avoid application of the open and obvious doctrine only when a person is subjected to an unreasonable risk of harm. Unavoidability is characterized by an *inability to be avoided*, an *inescapable* result, or the *inevitability* of a given outcome. Our discussion of unavoidability in *Lugo*[, 646 Mich 512,] was tempered by the use of the word "effectively," thus providing that a hazard must be unavoidable or inescapable in effect or for all practical purposes. *Accordingly, the standard for "effective unavoidability" is that a person, for all practical purposes, must be required or compelled to confront a dangerous hazard. As a parallel conclusion, situations in which a person has a choice whether to confront a hazard cannot truly be unavoidable, or even effectively so.* [*Hoffner*, 492 Mich at 468-469 (footnotes omitted; first and last emphases added).]

This Court recently considered whether an icy condition was effectively unavoidable in *Bullard*. As in this case, the ice at issue was an open and obvious hazard, and, as a result, the only issue before the Court was "whether the ice on which [the plaintiff] slipped was (1) unreasonably dangerous in and of itself, or (2) effectively unavoidable for him." *Bullard*, 308 Mich App at 405. With regard to the effectively unavoidable exception, the Court stated:

> *Put simply, the plaintiff must be "effectively trapped" by the hazard. Joyce v Rubin*, 249 Mich App 231, 242; 642 NW2d 360 (2002). The mere fact that a plaintiff's employment might involve facing an open and obvious hazard does not make the open and obvious hazard effectively unavoidable. See *Perkoviq* [*v Delcor Homes-Lake Shore Pointe, Ltd*, 466 Mich 11, 18; 643 NW2d 212 (2002)]; *Hoffner*, 492 Mich at 471-472. [*Bullard*, 308 Mich App at 411-412 (emphasis added).]

The Court found that the ice on which the plaintiff slipped was not effectively unavoidable because the plaintiff "had ample opportunity to avoid the ice." *Id*. at 412. The Court noted that the plaintiff "confronted the ice after making multiple decisions, any one of which he could have decided differently and thus avoided the hazard." *Id*. In particular,

> [the plaintiff's] fall was the end result of choices he made that could have been made differently. In no way was he "effectively trapped" by the ice—he consciously decided to put himself in a position where he would face the ice. After informing the hospital staff of the roof's snowy condition on February 22, [the plaintiff] could have refused to inspect the generator the next day, and instead waited until the weather improved—the inspection was a monthly occurrence and not necessitated by an emergency. On February 23, he could have waited to inspect the generator until later in the morning, when daylight might have alerted him to the possible hazards of doing so. When he reached the roof, he could have turned back—but he did not. He could have returned inside at any point on his journey to the generator—at the stone walkway, at the second ladder, at the catwalk—and sought assistance. And, again, because his job duties entailed

monthly inspections, he had the option of speaking with his employer or to the hospital staff—as he did on February 22—regarding the conditions on the roof.

In sum, there is nothing inescapable or inevitable about [the plaintiff's] accident. His argument to the contrary, which is that he was required to face the ice by virtue of his employment, is unavailing, and similar arguments have been rejected by the Michigan Supreme Court. His job duties did not mandate that he encounter an obvious hazard. [*Id*. at 412-413 (citations and footnote omitted).]

We find that the facts of this case are analogous to *Bullard*. Here, as he did in the trial court, plaintiff provides an extensive explanation in his brief on appeal regarding why it was not practical for him to take another path in order to deliver mail to the businesses subsequent to defendant on his mail route. Specifically, he explains that he had already delivered mail to the carwash and, therefore, needed to walk westbound to the apartment building next to the carwash in order to continue on his route, opining that it was "impractical[,] if not impossible[,]" to take the alternate route delineated in his brief on appeal. However, plaintiff's deposition testimony acknowledges that he was not inescapably required to confront the hazard under the circumstances of this case. *Hoffner*, 492 Mich at 456. Plaintiff stated the following in response to defense counsel's questions:

*Q*. [Y]ou could have gone across the street and delivered to those businesses as well, right?

*A*. Would it be physically possible?

*Q*. Yes.

*A*. Yes, but it would make no sense.

*Q*. But[,] in any event, you still had to deliver to businesses across the street from the car wash as well, correct?

*A*. Yes, but things have to be delivered in a sequence to make sense. I mean, I wouldn't deliver, for instance, here and then drive to another part of the town and deliver there. That doesn't make sense.

Plaintiff also expressly stated that he could refuse to deliver mail if he believed that it was unsafe, an acknowledgement by plaintiff that he was not required to continue on his usual route if he believed that it was too dangerous. Further, in light of plaintiff's explanation of his route, it is apparent that plaintiff could have walked back to his vehicle and driven to safer location in order to continue his route instead of crossing the sidewalk in front of the carwash, even if deviating from his usual course did not "make sense."

Additionally, plaintiff argues that this case clearly falls under the "effectively unavoidable" exception because he was inescapably required to attempt to cross the ice in order to avoid being suddenly struck by a vehicle. As such, plaintiff asserts that the point in time at which this Court should determine whether the condition was effectively unavoidable is the time at which plaintiff was "confronted by the extenuating circumstance," i.e., the time at which "the

-8-

car almost struck [p]laintiff full-on and he had to either stay or move." Plaintiff cites no authority in support of this position, and we decline to establish a bright-line rule in accordance with plaintiff's argument. Nothing about the hazardous condition, i.e., the ice on which plaintiff fell, changed between the time at which plaintiff began to cross the ice and the time at which plaintiff believed that he would be struck by the vehicle exiting the carwash. As in *Bullard*, it is clear that plaintiff "confronted the ice after making multiple decisions, any one of which he could have decided differently and thus avoided the hazard." *Bullard*, 308 Mich App at 412. The record shows that plaintiff decided to encounter the icy condition after employing his typical thought process to determine whether to cross the sidewalk: each day, including on the day of the incident, he "walk[ed] up, *s[aw] if there[] [was] a car there*, s[aw] if it[] [was] icy, and pick[ed] a path." (Emphasis added.) Therefore, it is apparent that plaintiff specifically considered the ice, which was open and obvious, and the possibility of the "extenuating circumstance" in this case, a car that was already emerging from the carwash, before choosing to cross the sidewalk in front of the carwash. As the Michigan Supreme Court stated in *Hoffner*, "situations in which a person has a choice whether to confront a hazard cannot truly be unavoidable, or even effectively so." *Hoffner*, 492 Mich at 468-469 (footnotes omitted). Therefore, we reject plaintiff's argument that the icy condition subsequently became effectively unavoidable due to the alleged conduct of a car exiting the carwash.

Therefore, on the record before us, reasonable minds could not differ in concluding that plaintiff was not " 'effectively trapped' by the hazard," *Bullard*, 308 Mich App at 412, and that the ice on which plaintiff slipped was not characterized "by an *inability to be avoided*, an *inescapable* result, or the *inevitability* of a given outcome," *Hoffner*, 492 Mich at 468. Likewise, there is no genuine issue of material fact that the ice did not "give rise to a *uniquely* high likelihood of harm or severity of harm if the risk [was] not avoided," especially given that, based on plaintiff's deposition testimony, the situation that occurred in this case resulted from "risks posed by ordinary conditions" at this particular location, i.e., vehicles exiting the carwash and ice that developed from water coming from the carwash. See *id*. at 462-463 (footnotes omitted). Accordingly, we conclude that the trial court properly granted defendant's motion for summary disposition because it is undisputed that the ice was open and obvious and there is no genuine issue of material fact regarding whether the circumstances of this case fall under the effectively unavoidable exception to the open and obvious doctrine.[4]

Given our conclusions regarding the applicability of the effectively unavoidable exception, we need not address the additional genuine issues of material fact identified by plaintiff in his brief on appeal because these issues of fact are not sufficient to preclude summary disposition of plaintiff's premises liability claim, as they have no effect on whether the ice was open and obvious or effectively unavoidable.

---

[4] Even if the trial court erred in failing to decide on the record whether the facts of this case fall under the effectively unavoidable exception, "[a] trial court's ruling may be upheld on appeal where the right result issued, albeit for the wrong reason." *Gleason v Michigan Dep't of Transp*, 256 Mich App 1, 3; 662 NW2d 822 (2003).

IV

Next, plaintiff argues that the trial court erred in granting summary disposition with regard to his public nuisance claim.[5] We disagree.

Michigan courts have historically recognized two basic categories of nuisance: private nuisance and public nuisance. *Adkins v Thomas Solvent Co*, 440 Mich 293, 302; 487 NW2d 715 (1992). "A private nuisance is a nontrespassory invasion of another's interest in the private use and enjoyment of land," *id.* at 302, while "[a] public nuisance is an unreasonable interference with a common right enjoyed by the general public," *Cloverleaf Car Co v Phillips Petroleum Co*, 213 Mich App 186, 190; 540 NW2d 297 (1994). In his brief on appeal, plaintiff acknowledges that he raised a public nuisance claim.

With regard to a public nuisance,

[t]he term "unreasonable interference" includes conduct that (1) significantly interferes with the public's health, safety, peace, comfort, or convenience, (2) is proscribed by law, or (3) is known or should have been known by the actor to be of a continuing nature that produces a permanent or long-lasting, significant effect on these rights. A private citizen may file an action for a public nuisance against an actor where the individual can show he suffered a type of harm different from that of the general public. [*Id.* (citations omitted).]

The Michigan Supreme Court has defined a public nuisance "as involving not only a defect, but threatening or impending danger to the public," and "an act [that] offends public decency." *Michigan ex rel Wayne Co Prosecutor v Bennis*, 447 Mich 719, 731; 527 NW2d 483 (1994) (quotation marks and citations omitted). "[T]he activity must be harmful to the public health, . . . create an interference in the use of a way of travel, . . . affect public morals, or prevent the public from the peaceful use of their land and the public streets." *Id.*, quoting *Garfield Twp v Young*, 348 Mich 337, 342; 82 NW2d 876 (1957) (quotation marks omitted). "A defendant is liable for a nuisance where (1) the defendant created the nuisance, (2) the defendant owned or controlled the land from which the nuisance arose, or (3) the defendant employed another person to do work from which the defendant knew a nuisance would likely arise." *Cloverleaf*, 213 Mich App at 191.

Even if we assume, without deciding, that the trial court erred in granting summary disposition of plaintiff's public nuisance claim on the basis that the condition was open and obvious, we conclude that summary disposition was proper under MCR 2.116(C)(10) because there is no genuine issue of material fact regarding whether plaintiff has a viable public nuisance claim. See *Gleason*, 256 Mich App at 3. Contrary to plaintiff's characterization of the harm that he suffered, plaintiff has failed to show that he suffered a type of harm that is different from the

---

[5] As stated above, because we find that the trial court granted summary disposition under MCR 2.116(C)(10), we need not consider plaintiff's argument that plaintiff stated a claim upon which relief may be granted, such that summary disposition was improper under MCR 2.116(C)(8).

type of harm that the general public would have suffered when encountering the icy sidewalk. *Cloverleaf*, 213 Mich App at 190; see also *Towne v Harr*, 185 Mich App 230, 232; 460 NW2d 596 (1990) ("However, our Supreme Court has long recognized the propriety of private citizens bringing actions to abate public nuisances, arising from the violation of zoning ordinances or otherwise, when the individuals can show damages *of a special character* distinct and different from the injury suffered by the public generally." [Emphasis added.]). Plaintiff argues that the nature of his injury was different because he suffered a shattered ankle that resulted in multiple surgeries, additional therapy, continuing pain, and ongoing dysfunction, and the public only experienced the inconvenience of having "to avoid or try and walk across or around the icy condition." However, this appears to be a false distinction that is not supported by the record, as the deposition testimony indicates that plaintiff sustained his injuries while he was attempting to walk across or "pick [a] path" around or through the icy condition, which demonstrates that that the nature of plaintiff's harm was not different from that experienced by the general public. Likewise, a patch of ice on the sidewalk creates a danger of sustaining injuries by slipping and falling on the slippery surface, which is the danger that causes the public's "inconvenience" of attempting to avoid the condition, and is exactly the type of harm experienced by plaintiff in this case. Therefore, we find that plaintiff does not have standing to raise a public nuisance action against defendant. *See Cloverleaf*, 213 Mich App at 190.

However, even we assume, arguendo, that plaintiff has standing to bring a public nuisance claim and that defendant's conduct is proscribed by law, there is no genuine issue of material fact regarding whether the ice "*significantly* interferes with the public's" safety or convenience, or whether the ice was "of a continuing nature that produces a *permanent or long-lasting, significant* effect on the rights of the public." *Id.* (emphasis added). There is no dispute that the icy condition only develops when water on the driveway freezes in the winter; thus, the condition is not permanent. Likewise, there is nothing in the record that rebuts plaintiff's own testimony indicating that the ice did not cause a *significant* interference with, or significantly affect, the public's health, safety, or convenience in utilizing the sidewalk at issue, even if the ice was "long-lasting" during the winter months. Plaintiff expressly stated that had walked across the sidewalk at issue on an almost-daily basis for 20 years, even though there were "issues from time to time at this location because . . . ice forms on the sidewalk." Moreover, plaintiff's own characterization of the harm experienced by the public in his brief on appeal also indicates that the harm was not significant: "Here, the general public exercising its right to use the sidewalk merely had to avoid or try and walk across or around the icy condition. Its only harm was this inconvenience." Therefore, viewing the record in the light most favorable to the plaintiff, we conclude that reasonable minds could not differ in concluding that plaintiff has failed to demonstrate a viable public nuisance claim. See *Allison*, 481 Mich at 425.[6]

Given our conclusion that there is no genuine issue of material fact that precludes

---

[6] In light of our conclusion that plaintiff failed to demonstrate a genuine issue of material fact with regard to the requisite elements of a public nuisance claim, we need not address the additional genuine issues of material fact identified by plaintiff in his brief on appeal because these issues of fact are not sufficient to preclude summary disposition.

summary disposition of plaintiff's premises liability and public nuisance claims, we need not address the other arguments raised by the parties on appeal, including, *inter alia*, whether defendant's conduct constitutes a nuisance in fact and whether plaintiff demonstrated that defendant had notice of the icy condition.

Affirmed. Defendant, being the prevailing party, may tax costs pursuant to MCR 7.219.

/s/ Michael J. Talbot
/s/ Kurtis T. Wilder
/s/ Karen M. Fort Hood