# STATE OF MICHIGAN

# COURT OF APPEALS

BRUCE BULLARD, JR.,

Plaintiff-Appellee,

v

OAKWOOD ANNAPOLIS HOSPITAL, also
known as OAKWOOD HEALTHCARE, INC.,

Defendant-Appellant.

FOR PUBLICATION
December 9, 2014
9:05 a.m.

No. 317334
Wayne Circuit Court
LC No. 11-014380-NO

Before: RIORDAN, P.J., and SAAD and TALBOT, JJ.

SAAD, J.

## I. INTRODUCTION

This case stems from a slip and fall accident. Plaintiff Bruce Bullard, Jr., ("Bullard") slipped on ice that formed on a wood plank, on the roof, at defendant Oakwood Annapolis Hospital ("Oakwood"). Under Michigan case law, ice is an "open and obvious" hazard. Open and obvious hazards cannot give rise to liability unless they cause an accident that involves "special aspects." These "special aspects" can only be present where the hazard is: (1) "unreasonably dangerous" in and of itself, or (2) "effectively unavoidable" for the plaintiff.

The trial court wrongly denied Oakwood's motion for summary disposition. It correctly held that the ice was an open and obvious hazard, but erred in holding that the ice was "unreasonably dangerous" in and of itself, or was "effectively unavoidable" for Bullard. The only issue before our Court is whether the ice on which Bullard slipped was: (1) "unreasonably dangerous" in and of itself, or (2) "effectively unavoidable" for him.

Because the ice was neither "unreasonably dangerous" in and of itself, nor was it "effectively unavoidable" for Bullard, no "special aspects" are present, and the ice is an open and obvious hazard that cannot give rise to liability. Accordingly, we reverse the holding of the trial court and remand for entry of an order granting summary disposition to Oakwood pursuant to MCR 2.116(C)(10).

## II. FACTS AND PROCEDURAL HISTORY

At all relevant times, Bullard was employed as an electrician for Edgewood Electric, which held a contract with Oakwood to do maintenance. Bullard has worked at Oakwood since

-1-

1998, and was assigned to work full time at the hospital in 2009. Part of his property maintenance duties included testing the hospital's five generators, which Bullard did on a monthly basis. One of the generators is located on the hospital roof, and is not easy to access—servicing it required Bullard to climb an indoor ladder to reach the roof, open a hatch, cross a stone walkway, scale another ladder, cross a metal catwalk to the generator, and finally walk across three 2x8 planks to reach the generator's control panel. The planks, which are the only way to reach the control panel, are not secured and are approximately 5 to 6 feet above the roof.

In late February 2011, Bullard prepared to do his monthly inspection of the roof generator. On February 22, he asked hospital maintenance to clear snow from the stone walkway and 2x8 planks, because he planned to inspect the generator the next day. On February 23, at around 4:00 to 4:30 AM, Bullard went up to the roof to inspect the generator. Though the roof was covered in snow, the stone pathway, metal catwalk, and planks had been cleared, as requested. As Bullard stepped on the first wooden plank to reach the control panel, he slipped on ice that had formed on the plank, and injured himself by falling to the roof below.

Bullard subsequently filed suit in the Wayne Circuit Court, and alleged that Oakwood was liable for negligence because it failed to remove a "dangerous condition"—ice—from its premises. He emphasized that the ice was "unavoidable" as part of his work duties. Oakwood responded by moving for summary disposition under MCR 2.116(C)(8) and (C)(10). It argued that the ice was an "open and obvious" hazard under Michigan law, which precluded Bullard's negligence suit. Oakwood further asserted that the two "special aspects" of an open and obvious hazard that can give rise to liability were not present in this case.

As stated above, the trial court wrongly denied Oakwood's motion for summary disposition. In its holding from the bench, it stated correctly that the ice on the 2x8 planks was an open and obvious condition, but erred when it held that there was a question of fact as to whether the ice was "unreasonably dangerous" or "effectively unavoidable" as part of Bullard's job.

Oakwood appealed the trial court's order. Our Court granted the appeal, but explicitly limited it to the issues raised in Oakwood's application—namely, whether the ice was "unreasonably dangerous" or "effectively unavoidable" for Bullard.[1] Specifically, Oakwood argues that ice is not a hazard that presents a substantial risk of severe harm or death, which means that it cannot be "unreasonably dangerous." And, Oakwood stresses that Bullard ultimately chose to access the generator and face whatever hazards existed on the way there, which means that the ice was not "effectively unavoidable" for him.

Bullard argues that the ice was an "unreasonably dangerous" hazard because of his injuries. He also claims that the ice was "effectively unavoidable," because it was located on the

---

[1] In other words, our Court barred Bullard from contesting the trial court's holding that the ice was an "open and obvious" condition. See *Bullard v Oakwood Annapolis Hosp*, unpublished order of the Court of Appeals, entered January 10, 2014 (Docket No. 317334).

2x8 planks, and the planks were the only way for him to access the generator control panel—which he had to access in the course of his employment.

## III. STANDARD OF REVIEW

A trial court's decision on a motion for summary disposition is reviewed de novo. *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003). A motion for summary disposition under MCR 2.116(C)(10)[2] challenges the factual sufficiency of a claim, and we consider the evidence—including "affidavits, depositions, admissions, or other documentary evidence"—in the light most favorable to the nonmoving party. *Gorman v American Honda Motor Co, Inc*, 302 Mich App 113, 115; 839 NW2d 223 (2013). Summary disposition may be granted under MCR 2.116(C)(10) when "there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law." *Id*. at 116.

## IV. ANALYSIS

## A. THE OPEN AND OBVIOUS DOCTRINE

A plaintiff who brings a premises liability action must show " '(1) the defendant owed [him] a duty, (2) the defendant breached that duty, (3) the breach was the proximate cause of the [his] injury, and (4) [he] suffered damages.' " *Sanders v Perfecting Church*, 303 Mich App 1, 4; 840 NW2d 401 (2013) (citation omitted). "The duty owed to a visitor by a landowner depends on whether the visitor was a trespasser, licensee, or invitee at the time of the injury." *Id*. A visitor is granted invitee status only if the purpose for which he was invited onto the owner's property was "directly tied to the owner's commercial business interests." *Stitt v Holland Abundant Life Fellowship*, 462 Mich 591, 604; 614 NW2d 88 (2000). A landowner must "exercise reasonable care to protect the invitee from an unreasonable risk of harm caused by a dangerous condition on the land." *Lugo v Ameritech Corp, Inc*, 464 Mich 512, 516; 629 NW2d 384 (2001).

However, Michigan law is clear that the landowner does not have to protect invitees from "open and obvious" dangers, because "such dangers, by their nature, apprise an invitee of the potential hazard, which the invitee may then take reasonable measures to avoid." *Hoffner v Lanctoe*, 492 Mich 450, 461; 821 NW2d 88 (2012). "Whether a danger is open and obvious depends on whether it is reasonable to expect that an average person with ordinary intelligence would have discovered it upon casual inspection." *Id*. This standard is an objective, not subjective, one, and requires "an examination of the objective nature of the premises at issue." *Id*. "The objective standard recognizes that a premises owner is not required to anticipate every harm that may arise as a result of the idiosyncratic characteristics of each person who may venture onto his land." *Id*. at n 15.

---

[2] Because the trial court considered evidence outside the pleadings when it denied defendant's motion for summary disposition, we analyze this case under MCR 2.116(C)(10). *Steward v Panek*, 251 Mich App 546, 554–555; 652 NW2d 232 (2002).

Here, there is no dispute as to whether: (1) Bullard was an invitee; (2) the ice on which he slipped was the proximate cause of his injury and caused him damages; or (3) the ice was an open and obvious hazard. This is because the trial court held that the ice was an open and obvious hazard, and our Court explicitly limited this appeal to a single issue: whether there are "special aspects" of Bullard's case that preclude application of the open and obvious doctrine.[3]

## B. "SPECIAL ASPECTS"

Recently, the Michigan Supreme Court emphasized that "exceptions to the open and obvious doctrine are *narrow* and designed to permit liability for such dangers only in *limited*, extreme situations." *Hoffner*, 492 Mich at 472 (emphasis original). "[L]iability does not arise for open and obvious dangers *unless special aspects* of a condition make even an open and obvious risk *unreasonably dangerous*. This may include situations in which it is 'effectively unavoidable' for an invitee to avoid the hazard posed by such an inherently dangerous condition." *Id.* at 455 (emphasis original). In other words, an open and obvious hazard that ordinarily precludes liability can have "special aspects" that give rise to liability in one of two ways: (1) the hazard is, in and of itself, "unreasonably dangerous"; or (2) the hazard was rendered "unreasonably dangerous" because it was "effectively unavoidable" for the injured party. *Id*. at 472–473; see also *Lugo*, 464 Mich at 518.

### 1. "UNREASONABLY DANGEROUS" IN AND OF ITSELF

An open and obvious hazard that is "unreasonably dangerous" can give rise to liability. *Hoffner*, 464 Mich at 472–473; and *Lugo*, 464 Mich at 518. An " 'unreasonably dangerous' hazard must be just that—not just a dangerous hazard, but one that is unreasonably so. And it must be *more than* theoretically or retrospectively dangerous, because even the most unassuming situation can often be dangerous under the wrong set of circumstances." *Hoffner*, 464 Mich at 472 (emphasis original).

Because the question of what constitutes an unreasonably dangerous condition is a question of law, we examine Michigan case law for guidance. An example of an open and obvious hazard that is "unreasonably dangerous" is "an unguarded thirty foot deep pit in the middle of a parking lot." *Lugo*, 464 Mich at 518. On the other hand, an example of an open and obvious hazard that is *not* "unreasonably dangerous" is ice and frost located on "several 2 x 4 slats of wood . . . nailed at the lower edge of [an] [approximately twenty foot high] roof." *Perkoviq v Delcor Homes–Lake Shore Pointe, Ltd*, 466 Mich 11, 13; 643 NW2d 212 (2002). "The mere presence of ice, snow, or frost on a sloped rooftop generally does not create an unreasonably dangerous condition." *Id*. at 19–20.

Here, the ice on which Bullard slipped is not "unreasonably dangerous" in and of itself because it does not "present . . . a substantial risk of death or severe injury." *Lugo*, 464 Mich at 518. Bullard slipped and fell off a 2 x 8 plank that was 5 to 6 feet above the roof. This danger is clearly much less of a danger than that encountered by the plaintiff in *Perkoviq*, who slipped and

---

[3] See n 2, supra.

fell off a 2 x 4 slat of wood that was approximately *20 feet* above the ground. *Perkoviq*, 466 Mich at 12–13. Moreover, the fact that plaintiff's job duties entailed a monthly walk across these planks during all weather conditions militates against a finding that the circumstances here constitute an unreasonably dangerous condition.

Accordingly, the ice was not "unreasonably dangerous" in and of itself, and we reverse the trial court's holding that it could be shown to be "unreasonably dangerous."

### 2. "EFFECTIVELY UNAVOIDABLE"

An open and obvious hazard that is "effectively unavoidable" for the plaintiff is rendered "unreasonably dangerous" and thus gives rise to liability. *Hoffner*, 464 Mich at 472–473; and *Lugo*, 464 Mich at 518. "Unavoidability is characterized by an *inability to be avoided*, an *inescapable* result, or the *inevitability* of a given outcome." *Hoffner*, 464 Mich at 468 (emphasis original). An "effectively unavoidable" hazard, therefore, "must truly be, for all practical purposes, one that a person is required to confront under the circumstances." *Id*. at 472. Put simply, the plaintiff must be "effectively trapped" unless he faces the hazard. *Joyce v Rubin*, 249 Mich App 231, 242; 642 NW2d 360 (2002). The mere fact that a plaintiff's employment might involve facing an open and obvious hazard does not make the open and obvious hazard "effectively unavoidable." *Perkoviq*, 466 Mich at 18; and *Hoffner*, 492 Mich at 471–472.

Here, the ice on which Bullard slipped was not "effectively unavoidable." In fact, the opposite is true: Bullard had ample opportunity to avoid the ice. He confronted the ice after making multiple decisions, any one of which he could have decided differently, and thus avoided the hazard. Bullard was clearly aware of the potential risks of inspecting the generator on February 23, because he asked the hospital staff to clear the stone pathway and wood planks on February 22.[4] He arrived at Oakwood from 4:00 AM to 4:30 AM on February 23—a time when it was obviously still dark. Rather than wait until daylight, Bullard chose to inspect the generator at this early hour, when it was dark and cold. When he opened the hatch to the roof, he saw that the pathways to the generator had been cleared of snow, as he had asked. As noted, the path to the generator involved a walk across multiple surfaces: a stone walkway, another ladder, a metal catwalk, and the 2x8 planks. Bullard chose to traverse each of these, before eventually slipping on the ice, falling, and suffering injury.

Accordingly, Bullard's fall was the end result of choices he made that could have been made differently. In no way was he "effectively trapped" by the ice—he consciously decided to put himself in a position where he would face the ice. *Joyce*, 249 Mich App at 242. After informing the hospital staff of the roof's snowy condition on February 22, Bullard could have refused to inspect the generator the next day, and instead wait until the weather improved—the inspection was a monthly occurrence and not necessitated by an emergency. On February 23, he

---

[4] The fact that Bullard made this request (which was complied with by the hospital maintenance staff) belies his claim that his job required him to confront the snow and ice on the roof. He clearly was able to ask the hospital staff to remove weather-related hazards on the route to the rooftop generator, and could have done so again on February 23.

could have waited to inspect the generator until later in the morning, when daylight might have alerted him to the possible hazards of doing so. When he reached the roof, he could have turned back—but he did not. He could have returned inside at any point on his journey to the generator—at the stone walkway, at the second ladder, at the catwalk—and sought assistance. And, again, because his job duties entailed monthly inspections, he had the option of speaking with his employer or to the hospital staff—as he did on February 22—regarding the conditions on the roof.

In sum, there is nothing "inescapable" or "inevitable" about Bullard's accident. *Hoffner*, 464 Mich at 468. His argument to the contrary, which is that he was "required" to face the ice by virtue of his employment, is unavailing, and similar arguments have been rejected by the Michigan Supreme Court. *Perkoviq*, 466 Mich at 18; and *Hoffner*, 492 Mich at 471–472. His job duties did not mandate that he encounter an obvious hazard.

Bullard could have made different choices that would have prevented him from encountering the ice, and the ice was accordingly not "effectively unavoidable." The trial court's ruling that the ice could be shown to be "effectively unavoidable" was wrong.

## V. CONCLUSION

The trial court's holding that the ice might have been "unreasonably dangerous" in and of itself, or "effectively unavoidable" for Bullard, is incorrect as a matter of law. Its holding is thus reversed, and we remand for entry of an order granting Oakwood's request for summary disposition pursuant to MCR 2.116(C)(10).

Reversed and remanded. We do not retain jurisdiction.

/s/ Henry William Saad
/s/ Michael J. Riordan
/s/ Michael J. Talbot