STATE OF MICHIGAN
COURT OF APPEALS

SPE UTILITY CONTRACTORS, LLC,

Plaintiff/Counter-Defendant-
Appellant,

v

ALL SEASONS SUN ROOMS PLUS, LLC,

Defendant/Counter-Plaintiff/Third-
Party-Plaintiff-Appellee,

and

DAVID P. POSTILL and LAURA POSTILL,

Third-Party Defendants.

UNPUBLISHED
October 13, 2015

No. 323363
St. Clair Circuit Court
LC No. 12-003177-CK

Before: BORRELLO, P.J., and JANSEN and OWENS, JJ.

PER CURIAM.

Plaintiff/counter-defendant SPE Utility Contractors, LLC ("SPE") appeals as of right an order of judgment in favor of defendant/counter-plaintiff/third-party plaintiff All Seasons Sun Rooms Plus, LLC ("All Seasons") and against SPE. We affirm.

I. FACTS AND PROCEDURAL HISTORY

This case arises from a contract dispute between SPE and All Seasons regarding the installation of a three-level sunroom enclosure on a residential property. Third-party defendant David Postill ("Postill") is the sole member of SPE. Postill and third-party defendant Laura Postill ("Laura") constructed a three-level porch on their house sometime between 2008 and 2011. The Postills decided to enclose the three-level porch in order to create three sunrooms that they could use year-round. SPE was the general contractor on the project. The construction project was ultimately referred to All Seasons, which is a private labeled dealer that provides installation services. Mark Malloy ("Malloy") owns All Seasons. Postill contacted Malloy, and Malloy came out to the house. Postill told Malloy that the parties intended to use transom windows in the sunrooms. A transom window is a fixed piece of glass. Malloy took pictures and measurements of the porch area. Postill and Malloy also sent e-mails to each other regarding the project. On December 12, 2011, Malloy sent Postill a proposal via e-mail detailing the plan

to install glass panels around the three levels of the porch and the costs associated with the job. The e-mail stated that 1/3 of the total price was due when the contract was signed, 1/3 was due when construction began, and 1/3 was due upon completion.

On December 16, 2011, Postill and Malloy met and signed an agreement. Postill wrote a deposit check on behalf of SPE to Malloy for $12,565 when the parties signed the contract. The agreement consisted of the December 12, 2011 e-mail from Malloy to Postill, an e-mail from Postill to Malloy, another copy of the December 12, 2011 e-mail from Malloy to Postills with Postill's handwritten amendments, a document from All Seasons that included a quotation for the project, and several drawings of the proposed construction. The e-mail from Postill to Malloy stated that "[o]nce plans are approved by SPE. [sic] SPE shall issue a contract to All Season [sic] sunrooms to commence construction." The e-mail further provided, "You will provide final plans subject to our final approval," and "You are approved to proceed with plans on the upper unit & Middle Unit." The quotation sheet that was part of the contract provided that custom transom windows were included in the plan for the "TOP" and "BOTTOM." The quotation also provided, "This Contract Subject to Acceptance of Drawings." The quotation also noted that there was approval to start the plans.

Postill made handwritten changes to the agreement before the parties signed it. Postill made a handwritten alteration on the e-mail from Malloy to Postill noting that the sill height for the windows in the middle-level sunroom should "match existing center sunroom." Postill also wrote the individual costs for each level of the sunroom on the agreement and made a handwritten note that the kitchen door and bottom-level sunroom projects were on hold. The total cost of all of the projects was $37,695. Malloy testified that Postill told him to get going as soon as he could.

All Seasons commenced construction after the parties signed the agreement. Postill wrote a check for $14,930 upon the start of construction. On January 27, 2012, Malloy wrote an e-mail to Postill asking if there were any changes to the agreement. Postill responded that "[t]he lay out [sic] looks great for the top floor." Postill and Malloy met again after construction was complete on the top level of the porch. The two discussed the placement of the windows for the middle level relative to the columns that surrounded the middle level. According to Malloy, he showed Postill drawings for the middle-level sunroom, which Postill said he loved and for Malloy to "keep going." Postill travelled to Florida. According to Malloy, Postill called him and left a voice mail directing him to continue the project and finish the middle-level sunroom. However, Malloy also testified that Postill would not commit to construction on the middle level. Sometime after he finished construction on the upper-level sunroom, Malloy created a "mockup" of the framework for the windows in the middle level of the sunroom, which the superintendent of SPE and Laura approved.

Postill became dissatisfied with the middle sunroom after All Seasons or a contractor working for All Seasons cut off the bottom of the several columns surrounding the middle level of porch in order to install the windows. Postill was also dissatisfied with several other aspects of the middle-level sunroom, including that All Seasons did not install transom windows on the upper portion of the windowpanes to match the transom windows on the rest of the house. On March 9, 2012, Postill and Malloy exchanged e-mails regarding the issues with the installation. Ultimately, All Seasons never installed the windows in the middle level of sunroom.

-2-

On June 18, 2012, SPE filed a complaint in the Macomb Circuit Court, alleging that All Seasons breached the contract when it delivered and installed windows and materials that failed to conform with the construction plans, damaged columns surrounding the middle-level sunroom by performing labor that was contrary to industry standards, failed to complete the work outlined in the contract, and demanded the final payment under the contract in spite of the fact that the project was not complete. The summons was issued on the same day and stated that Malloy was the resident agent of All Seasons. The summons and complaint were served on Rebecca Malloy ("Rebecca") on July 13, 2012. According to the proof of service, Rebecca is a co-owner of All Seasons. On July 25, 2012, Rebecca sent SPE's attorney a letter indicating that she talked with Postill and that the two agreed to meet to rectify the issues with the sunroom in lieu of pursuing litigation. Rebecca instructed SPE's attorney to place the court file on hold until the meeting. On July 31, 2012, SPE's attorney wrote a letter to Rebecca extending the time to file an answer until August 10, 2012. All Seasons failed to file an answer on August 10, 2012, and default was entered for failure to plead or otherwise defend on August 13, 2012.

On October 15, 2012, All Seasons filed a motion to set aside the default and transfer venue to the St. Clair Circuit Court. All Seasons argued that service was not made on the resident agent and that All Seasons had a meritorious defense. All Seasons contended that it filed a construction lien that would become the subject of a foreclosure action in the St. Clair Circuit Court and that the action should be transferred to the St. Clair Circuit Court. On November 14, 2012, SPE filed a response to All Seasons's motion to set aside the default and transfer venue. SPE denied that All Seasons had a defense. SPE argued in its corresponding brief that All Seasons never completed the project and failed to address the fact that it did not install transom windows. SPE also argued that All Seasons failed to show that the venue was inconvenient.

The trial court held a hearing on the motion to set aside the default and transfer venue on November 19, 2012. The parties argued consistent with the motion and response. SPE's attorney noted that the parties met on August 1, 2012, but could not reach an agreement. The court ruled that All Seasons presented a meritorious defense and established good cause. On December 7, 2012, the trial court entered an order granting defendant's motion to set aside the default and transfer venue to the St. Clair Circuit Court. All Seasons filed an answer to the complaint on December 12, 2012, contending that SPE breached its contractual obligations.

On December 27, 2012, All Seasons filed a counter-complaint against SPE and a third-party complaint against the Postills in the St. Clair Circuit Court, alleging breach of contract, entitlement to foreclosure of the construction lien, and unjust enrichment. All Seasons alleged that SPE and the Postills became dissatisfied with aspects of the project after the project was substantially completed. SPE and the Postills refused to engage in talks with All Seasons or make additional payments. SPE and the Postills filed an answer to All Seasons's counter-complaint and third-party complaint. SPE denied that it breached the contract for failure to make a payment since defendant breached the contract first. The Postills denied the allegations regarding foreclosure of a lien and unjust enrichment.

On January 3, 2014, SPE filed a motion for partial summary disposition under MCR 2.116(C)(10), arguing that All Seasons breached the contract when it did not obtain SPE's approval before constructing the middle level of the sunroom. SPE contended that there was no

-3-

genuine issue of material fact regarding whether All Seasons was required to provide final plans for SPE to approve and failed to do so. On January 21, 2014, All Seasons filed a response to the motion for partial summary disposition, arguing that there were genuine issues of material fact regarding whether it was required to submit final plans, whether it did submit final plans for the middle level of the sunroom, and whether SPE approved the project. All Seasons also argued that there were facts indicating that David Postill waived the requirement that he approve final plans and noted that David Postill could not recall receiving final plans for the project.

The trial court held a hearing on the motion on January 27, 2014. The parties argued consistent with the motion and response. The court determined that there was evidence indicating that the parties waived the requirement that All Seasons provide plans for the middle sunroom and that consent was given to proceed. The court denied SPE's motion for partial summary disposition. The case ultimately proceeded to trial on April 29, 2014. The jury determined that SPE committed a material breach of the contract and that All Seasons was entitled to $15,150 in damages.

## II. SUMMARY DISPOSITION

SPE first argues that the trial court erred when it denied its motion for partial summary disposition because the court did not require a showing of clear and convincing evidence that there was a modification or waiver of the contract. We disagree.

"A trial court's decision on a motion for summary disposition is reviewed de novo." *Bullard v Oakwood Annapolis Hosp*, 308 Mich App 403, 408; 864 NW2d 591 (2014). "A motion for summary disposition under MCR 2.116(C)(10) challenges the factual sufficiency of a claim, and we consider the evidence—including 'affidavits, depositions, admissions, or other documentary evidence'—in the light most favorable to the nonmoving party." *Id*. (citation omitted). Summary disposition is proper under MCR 2.116(C)(10) if " 'there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law.' " *Id*. (citation omitted). Additionally, we review de novo issues of the existence and interpretation of a contract. *Klein v HP Pelzer Auto Sys, Inc*, 306 Mich App 67, 75; 854 NW2d 521 (2014).

This Court interprets a contract according to the plain and ordinary meaning of the contract. *Klein*, 306 Mich App at 75.

> Under ordinary contract principles, if contractual language is clear, construction of the contract is a question of law for the court. If the contract is subject to two reasonable interpretations, factual development is necessary to determine the intent of the parties and summary disposition is therefore inappropriate. If the contract, although inartfully worded or clumsily arranged, fairly admits of but one interpretation, it is not ambiguous. [*Id*. at 76 (citations and quotation marks omitted).]

The parties to a contract may modify the contract orally or in writing. *Kloian v Domino's Pizza, LLC*, 273 Mich App 449, 454; 733 NW2d 766 (2006). The parties must provide mutual consent for the modification. *Id*. Mere silence on the part of one party does not constitute waiver. *Quality Prod & Concepts Co v Nagel Precision, Inc*, 469 Mich 362, 365; 666 NW2d 251 (2003).

" 'The mutuality requirement is satisfied where a modification is established through clear and convincing evidence of a written agreement, oral agreement, or affirmative conduct establishing mutual agreement to waive the terms of the original contract.' " *Kloian*, 273 Mich App at 454 (citation omitted).

The trial court did not err when it denied SPE's motion for partial summary disposition because the contract language was ambiguous, and there was evidence indicating that All Seasons submitted final plans and received approval. The contract requires that All Seasons submit "final plans subject to our final approval." However, the contract does not define the phrase "final plans" and does not specify who must provide final approval. The contract also does not specify whether All Seasons was required to submit final plans with regard to each level of the sunroom. Thus, the contract is subject to more than one reasonable interpretation, and factual development was necessary to determine the intent of the parties. See *Klein*, 306 Mich App at 76.

There was also evidence indicating that All Seasons submitted final plans and received approval. Malloy testified during his deposition that he created a "mockup" of the framework for the windows in the middle level of the sunroom, which the superintendent of SPE and Laura approved. It is not clear from the language of the contract whether the "mockup" could constitute final plans for the construction of the middle-level sunroom or whether Laura and the superintendent were able to give approval on behalf of SPE. Thus, there is a genuine issue of material fact with regard to whether the "mockup" constituted the final plans for the middle-level sunroom. See *Bullard*, 308 Mich App at 408; *Klein*, 306 Mich App at 76.

In addition, SPE attached to its motion for partial summary disposition a set of drawings that were not part of the original contract. The drawings are for the middle-level sunroom and have a confirmation date of February 8, 2012. The drawings also indicate that they were drawn on March 14, 2012. According to Malloy, he showed Postill the drawings, and Postill told him to keep going on the project. According to Postill, he was unfamiliar with the drawings, and the drawings were generated after construction began on the middle level. This testimony raises a genuine issue of material fact regarding whether All Seasons submitted final plans and received approval. See *Bullard*, 308 Mich App at 408.

Additionally, the fact that SPE issued a final contract to commence construction also indicates that All Seasons provided final plans and received approval. The contract provided that "[o]nce plans are approved by SPE. [sic] SPE shall issue a contract to All Season [sic] sunrooms to commence construction." Postill testified in his deposition that SPE issued a final contract to All Seasons. The fact that SPE issued a final contract to commence construction indicates that SPE approved final plans since SPE was not required to issue a contract to commence construction until it approved the plans that All Seasons submitted. See *Bullard*, 308 Mich App at 408. Thus, All Seasons presented evidence establishing a genuine issue of material fact on the issue whether it presented final plans for the middle-level sunroom and whether SPE approved the plans. See *id.*; *Klein*, 306 Mich App at 76.

Furthermore, Postill's testimony regarding whether All Seasons submitted final plans was ambiguous. Postill testified regarding the final plans during his deposition as follows:

-5-

*Q*. All right. But you don't believe [Malloy] submitted a plan for the second level.

*A*. I don't recollect. I know there was a top porch one and I believe that was approved. The other ones I don't believe were approved. I don't even think I have a copy of them, I don't think they were sent to me.

Thus, Postill testified that he could not remember whether Malloy submitted a plan for the middle-level sunroom, and he testified that he did not believe that the plans were approved. It is apparent from Postill's testimony that he was unsure whether All Seasons provided final plans for the middle-level sunroom, which further supports All Seasons's argument that there was a genuine issue of material fact regarding whether the plans were submitted. See *Bullard*, 308 Mich App at 408.

Even assuming that All Seasons did not supply final plans or receive approval, All Seasons presented evidence creating a genuine issue of material fact with regard to whether the parties waived the requirement that All Seasons provide plans for the middle level of the sunroom before beginning construction. Malloy testified during his deposition that Postill called him sometime after the upper-level sunroom was complete. Malloy testified, "At that point he called, left me a voice mail, looks fantastic, Mark, keep going, I want to go ahead and get the middle unit done as well, which was the breezeway." Malloy also testified that Postill sent him e-mails indicating that Malloy could begin construction on the middle-level sunroom. This testimony raises a genuine issue of material fact with regard to whether the parties engaged in affirmative conduct establishing a mutual agreement to waive the requirement that All Seasons provide final plans before beginning construction on the middle-level sunroom. See *Bullard*, 308 Mich App at 408; *Kloian*, 273 Mich App at 454. Accordingly, the trial court did not err when it denied SPE's motion for partial summary disposition. See *Bullard*, 308 Mich App at 408.

### III. MOTION TO SET ASIDE THE DEFAULT

SPE next argues that the trial court abused its discretion when it granted All Seasons's motion to set aside entry of the default. We disagree.

We review a trial court's decision on a motion to set aside a default for an abuse of discretion. *Huntington Nat'l Bank v Ristich*, 292 Mich App 376, 383; 808 NW2d 511 (2011). "A trial court abuses its discretion when it reaches a decision that falls outside the range of principled outcomes." *Id*. "Although the law favors a determination of a claim on the basis of its merits, the policy of this state is generally against setting aside defaults and default judgments that have been properly entered." *ISB Sales Co v Dave's Cakes*, 258 Mich App 520, 526; 672 NW2d 181 (2003).

MCR 2.603(D)(1) provides, "A motion to set aside a default or a default judgment, except when grounded on lack of jurisdiction over the defendant, shall be granted only if good cause is shown and an affidavit of facts showing a meritorious defense is filed." Good cause is shown if there was "a substantial irregularity or defect in the proceeding on which the default is

-6-

based or a reasonable excuse for failure to comply with the requirements that created the default." *ISB Sales Co*, 258 Mich App at 531. The strength of the defense affects the showing of good cause that is required under the court rule. *Alken-Ziegler, Inc v Waterbury Headers Corp*, 461 Mich 219, 233; 600 NW2d 638 (1999). "[I]f a party states a meritorious defense that would be absolute if proven, a lesser showing of 'good cause' will be required than if the defense were weaker, in order to prevent a manifest injustice." *Id*. at 233-234.

### A. GOOD CAUSE

All Seasons established good cause to set aside the default since there was a substantial irregularity in the proceeding on which the default was based and a reasonable excuse for failure to comply with the requirements creating the default. See *ISB Sales Co*, 258 Mich App at 531. The Michigan Court Rules do not address the proper manner for service of process on a limited liability company (LLC). However, MCR 2.105(H)(1) provides, "Service of process on a defendant may be made by serving a summons and a copy of the complaint on an agent authorized by written appointment or by law to receive service of process." MCL 450.4207(1)(b) requires an LLC to have a resident agent. MCL 450.4207(2) adds, "The resident agent appointed by a limited liability company is an agent of the company upon whom any process, notice, or demand required or permitted by law to be served upon the company may be served." Thus, the court rules indicate that the resident agent is the proper party to receive service of the summons and complaint since the resident agent is authorized by law to receive service of process. See MCL 450.4207(1)(b) and (2); MCR 2.105(H)(1).

All Seasons established a substantial irregularity in the proceeding on which default was based. Malloy, the resident agent of All Seasons, was not served with the summons and complaint. This constitutes a substantial irregularity in the proceeding since the proper party was not served with a copy of the summons and complaint. See *ISB Sales Co*, 258 Mich App at 531. Although the proof of service indicated that Rebecca was a co-owner of All Seasons, SPE failed to present evidence showing that Rebecca was a co-owner of All Seasons. The parties also do not dispute the fact that Rebecca was not the resident agent of All Seasons. Therefore, the failure to serve the proper party with process constitutes a substantial irregularity in the proceeding on which default was based. See *id*.

SPE argues that All Seasons had actual notice of the lawsuit, which cured the defect in service of process. MCR 2.105(J)(3) provides, "An action shall not be dismissed for improper service of process unless the service failed to inform the defendant of the action within the time provided in these rules for service." MCR 2.105(I)(1) adds, "On a showing that service of process cannot reasonably be made as provided by this rule, the court may by order permit service of process to be made in any other manner reasonably calculated to give the defendant actual notice of the proceedings and an opportunity to be heard."

On July 25, 2012, Rebecca sent a letter to SPE's attorney, in which she stated that the parties planned to negotiate the issues in lieu of going to court. Rebecca instructed SPE's attorney, "We are interested in resolving these issues in lieu of going to court. Please place the file on hold until we meet." However, Rebecca did not state that All Seasons received a copy of

the summons and complaint.  Instead, it is equally probable that Rebecca requested that SPE's attorney refrain from filing a lawsuit in the case until after the parties met.  Furthermore, even assuming that Rebecca's letter constituted actual knowledge of the lawsuit, actual knowledge of the lawsuit merely prevented the court from dismissing the lawsuit.  It did not prevent All Seasons from establishing good cause to set aside the default.  See MCR 2.105(J)(3); *ISB Sales Co*, 258 Mich App at 531.  Therefore, even assuming that All Seasons had actual knowledge of the lawsuit, All Seasons established a substantial irregularity in the proceeding that established good cause to set aside the default.  See *ISB Sales Co*, 258 Mich App at 531.

All Seasons also showed a reasonable excuse for failure to comply with the requirements that created the default.  On July 25, 2012, Rebecca sent SPE's attorney the letter indicating that she was going to meet with Postill to negotiate the issues with the sunroom in lieu of litigation.  On July 31, 2012, the attorney for SPE wrote a letter to Rebecca extending the time to file an answer until Friday, August 10, 2012.  However, All Seasons did not file an answer, and default was entered for failure to plead or otherwise defend on Monday, August 13, 2012.  Although All Seasons did not file an answer within the extended time frame, it has a reasonable excuse for failing to do so since there were ongoing negotiations to resolve the issues outside of court.  As the trial court noted, default was entered "rather quick" after All Seasons failed to file a response since the default was filed the next business day.  Thus, although All Seasons failed to file an answer within the proper time frame, All Seasons had a reasonable excuse for doing so because the parties were attempting to negotiate.  See *ISB Sales Co*, 258 Mich App at 531.  To the extent that All Seasons's showing of good cause is weakened by the fact that it failed to file an answer before the extended deadline, a lesser showing of good cause is required since All Seasons presented an absolute meritorious defense, as discussed in further detail below.  See *Alken-Zeigler, Inc*, 461 Mich at 233-234.  For the reasons discussed above, All Seasons established good cause to set aside the default.  See *id.*; *ISB Sales Co*, 258 Mich App at 531.

## B.  MERITORIOUS DEFENSE

In addition, All Seasons attached an affidavit to its motion to set aside the default that established a meritorious defense.  All Seasons attached an affidavit of Malloy to its motion to set aside the default.  In his affidavit, Malloy stated that All Seasons installed the sunroom that the parties agreed to install.  He added that Postill did not object to the materials used or the workmanship involved in the installation of the sunroom until after All Seasons completed installation.  Malloy added that he noticed during his last visit to the construction site that the work site was occupied and that it did to appear that any of the materials were replaced or changed.  Malloy stated that Postill refused to make the final payment that was due under the contract and that All Seasons was in the process of initiating litigation to foreclose upon a construction lien that All Seasons filed on the home.  Finally, Malloy stated that All Seasons complied with the terms of the contract.  The affidavit established a meritorious defense to the complaint since Malloy stated that All Seasons complied with the requirements of the contract and that Postill refused to pay All Seasons for the work under the contract.  See *ISB Sales Co*, 258 Mich App at 531.  This defense would be absolute if proven since Malloy stated that All Seasons fully complied with the contract, and SPE failed to comply with the contract.  See *Alken-Ziegler, Inc*, 461 Mich at 233-234.  Accordingly, the trial court properly granted the motion to set aside the default since All Seasons established good cause and a meritorious defense.  See MCR 2.603(D)(1).

-8-

Affirmed.

/s/ Stephen L. Borrello
/s/ Kathleen Jansen
/s/ Donald S. Owens