# STATE OF MICHIGAN

# COURT OF APPEALS

BRIANNA FERGUSON,

      Plaintiff-Appellant,

UNPUBLISHED
December 7, 2017

v

LAUTREC LTD., doing business as COACH
HOUSE APARTMENTS,

      Defendant-Appellee.

No. 334435
Oakland Circuit Court
LC No. 2015-150139-NO

Before: JANSEN, P.J., and CAVANAGH and CAMERON, JJ.

PER CURIAM.

Plaintiff appeals as of right the trial court's August 10, 2016 order granting defendant's motion for summary disposition under MCR 2.116(C)(10). We affirm.

## I. FACTUAL BACKGROUND

On the morning of January 22, 2015, plaintiff and her boyfriend, Terrance Reed, were preparing to depart from plaintiff's apartment to make their flight to Florida. It was approximately 5:00 a.m. when Reed walked out the back entrance of the apartment building to the parking lot where plaintiff's vehicle was located. He drove the vehicle to the front of the apartment to wait for plaintiff. According to Reed, he had been waiting for less than a minute when plaintiff exited the apartment. Plaintiff testified at her deposition that she was carrying her purse and pulling a suitcase when she walked out of the front entrance to her apartment building. She stepped onto a landing, stepped down onto the sidewalk, then slipped on a patch of ice. Plaintiff claimed she did not see the ice when she stepped onto the sidewalk, but she noticed the ice afterwards. She could not remember the size of the patch of ice or how long it may have been there.

Reed said he was getting out of the vehicle to help plaintiff with her suitcase when he saw her fall. He recalled that plaintiff took a step off the landing and onto the sidewalk, and she walked four to five feet before she slipped and fell. He did not see any ice on the sidewalk at that time, but after he ran over to help plaintiff, he noticed a patch of ice just behind where she fell. Reed did not notice whether there was salt on the sidewalk, but plaintiff claimed the sidewalk was not salted. Plaintiff sustained a fractured ankle from the fall.

Plaintiff brought a statutory claim under MCL 554.139(1)(a) and a claim under the common-law premises liability doctrine. Defendant filed a motion for summary disposition under MCR 2.116(C)(10), claiming that it was not liable for plaintiff's injuries. The trial court granted defendant's motion, holding the statutory claim failed because the sidewalk was fit for its intended purpose under MCL 554.139(1)(a), and the common-law premises liability claim failed because the icy sidewalk constituted an open and obvious condition of which no special aspect applied. On appeal, plaintiff claims that defendant (1) violated the statutory duty under MCL 554.139(1)(a) to maintain common areas in a manner fit for the use intended, and (2) is liable under a theory of common-law premises liability because defendant failed to remedy the icy sidewalk.

## II. STANDARD OF REVIEW

"A motion under MCR 2.116(C)(10) should be granted if the evidence submitted by the parties 'fails to establish a genuine issue regarding any material fact, [and] the moving party is entitled to judgment as a matter of law.' " *Allison v AEW Capital Mgt, LLP*, 481 Mich 419, 424-425; 751 NW2d 8 (2008) (citations omitted; alterations in original). We are required to review the record in a light most favorable to the nonmoving party to determine whether a genuine issue of material fact exists. *Id*. at 425. In doing so, this Court considers the affidavits, pleadings, depositions, admissions, and other documentary evidence. *Liparoto Constr, Inc v Gen Shale Brick, Inc*, 284 Mich App 25, 29; 772 NW2d 801 (2009). A genuine issue of material fact exists when reasonable minds could differ with respect to an issue. *Allison*, 481 Mich at 425.

## III. STATUTORY CLAIM

Plaintiff argues that defendant is liable for her injuries because it breached its duty to maintain the common area of the apartment, i.e., the sidewalk, in a condition fit for its intended use as required under MCL 554.139(1)(a). We disagree.

MCL 554.139(1)(a) provides the following:

(1) In every lease or license of residential premises, the lessor or licensor covenants:

(a) That the premises and all common areas are fit for the use intended by the parties.

"The primary goal of statutory interpretation is 'to ascertain the legislative intent that may be reasonably inferred from the words expressed in the statute.' " *Allison*, 481 Mich at 427 (citation omitted). "If the language of the statute is clear, we presume that the Legislature intended the meaning expressed," and we interpret the language according to its plain and ordinary meaning. *Id*.

The parties do not dispute that a sidewalk constitutes a "common area" for purposes of the statute. See *Benton v Dart Props, Inc*, 270 Mich App 437, 443-444; 715 NW2d 335 (2006) ("We conclude that sidewalks . . . constitute 'common areas' under MCL 554.139(1)(a)."). Instead, the parties dispute whether the icy sidewalk at issue was "fit for the use intended by the parties." Our Supreme Court defined "fit" as "adapted or suited; appropriate," *Allison*, 481

Mich at 429, quoting *Random House Webster's College Dictionary* (1997) (quotation marks omitted), and a sidewalk's intended purpose is for walking, *Benton*, 270 Mich App at 444. Defendant, therefore, has a duty to keep the sidewalk adapted or suited for walking.

The question, then, turns on whether the sidewalk in this case was fit for the intended purpose of walking. In *Benton*, we held that "a sidewalk covered with ice is not fit for this purpose," *id.*, but our Supreme Court later held that MCL 554.139(1)(a) "does not require any level of fitness beyond what is necessary to allow tenants to use the parking lot as the parties intended." *Allison*, 481 Mich at 431. The *Allison* Court set forth a framework to be applied in slip-and-fall cases such as this, and while that case involved the use of a parking lot, the legal principles equally apply to the use of a sidewalk. According to *Allison*, a common area need not "require a lessor to maintain a lot in an ideal condition or in the most accessible condition possible, but merely requires the lessor to maintain it in a condition that renders it fit." *Id*. at 430. The "[m]ere inconvenience of access, or the need to remove snow and ice from parked cars, will not defeat the characterization of a lot as being fit for its intended purposes." *Id*. Because the plaintiff in *Allison* could not "show that the condition of the parking lot . . . precluded access to his vehicle," our Supreme Court held that the Court of Appeals erred when it concluded that "the parking lot was unfit simply because it was covered in snow and ice." *Id*. Likewise, a sidewalk may not be rendered unfit simply because there is snow or ice on it—more is required. Our Supreme Court explained that a duty to a lessor will "be triggered only under much more exigent circumstances," and the accumulation of approximately 1 to 2 inches of snow on a parking lot did not meet such a standard. *Id*.

In this case, the sidewalk was not unfit simply because there was a patch of ice. Plaintiff has not shown that the condition of the sidewalk precluded her from accessing it, and there are no exigent circumstances here that trigger the lessor's duty under MCL 554.139(1)(a). The parties testified that, although approximately 2 to 3 inches of snow had accumulated on the grass, there was no snow on the sidewalk. Plaintiff claimed that she would use the front sidewalk, where she fell, approximately 40% of the time when exiting her apartment. She reported no other problems accessing the sidewalk in the past. While it was early morning, the weather reports indicated there had not been an accumulation of snow in the two days leading up to the incident, and the temperatures remained below freezing both days. There is no evidence in the record as to the size of the ice patch or whether it was black ice. Plaintiff and Reed were unable to describe the ice, and the only photographs of the sidewalk were taken at least three or four days after the incident. In those photographs, there was far more than 2 to 3 inches of snow, and even then, the sidewalk only had small patches of ice and snow that would not have rendered it entirely unfit for walking. Even more, an outdoor light illuminated the area around the sidewalk, which would allow plaintiff to view any potential hazards in the dark morning hours. When considering the entirety of the evidence in the record, the condition of the sidewalk, albeit inconvenient and not the "most accessible," was not so severe as to render it unfit for its intended purpose of walking.

## IV. COMMON-LAW PREMISES LIABILITY

Plaintiff also argues that defendant is liable under a theory of common-law premises liability. We disagree.

To prevail on a premises liability claim, a plaintiff must prove the elements of negligence: duty, breach, causation, and damages. *Buhalis v Trinity Continuing Care Servs*, 296 Mich App 685, 693; 822 NW2d 254 (2012). "Generally an owner of land 'owes a duty to an invitee to exercise reasonable care to protect the invitee from an unreasonable risk of harm caused by a dangerous condition on the land.' " *Id*. (citation omitted). However, the duty to exercise reasonable care "does not extend to open and obvious dangers. *Id*. at 693. When "dangers are known to the invitee or are so obvious that the invitee might reasonably be expected to discover them, an invitor owes no duty to protect or warn an invitee unless he should anticipate the harm despite knowledge of it on behalf of the invitee." *Id*. "The standard for determining if a condition is open and obvious is whether an average user with ordinary intelligence [would] have been able to discover the danger and the risk presented upon casual inspection." *Slaughter v Blarney Castle Oil Co*, 281 Mich App 474, 478; 760 NW2d 287 (2008) (quotation marks and citation omitted). "The test is objective, and the inquiry is whether a reasonable person in the plaintiff's position would have foreseen the danger, not whether the particular plaintiff knew or should have known that the condition was hazardous." *Id*. at 479.

"Generally, the hazard presented by snow and ice is open and obvious, and the landowner has no duty to warn of or remove the hazard." *Buhalis*, 296 Mich App at 694. Plaintiff claims that the ice was not open and obvious because she did not see the ice before she fell. This exact argument was raised in *Buhalis*, and this Court explained that if a "condition creates a risk of harm *only* because the invitee does not discover the condition or realize its danger, then the open and obvious doctrine will cut off liability if the invitee should have discovered the condition and realized its danger." *Id*. (quotation marks and citation omitted). This Court further stated:

> When applying the open and obvious danger doctrine to conditions involving the natural accumulation of ice and snow, our courts have progressively imputed knowledge regarding the existence of a condition as should reasonably be gleaned from all of the senses as well as one's common knowledge of weather hazards that occur in Michigan during the winter months. Thus, the question is whether the ice was visible on casual inspection or whether there were other indicia of a potentially hazardous condition that would impute knowledge on the part of [the plaintiff]. [*Id*., quoting *Slaughter*, 281 Mich App at 479, 483 (quotation marks omitted).]

Plaintiff and Reed could not remember the characteristics of the ice. However, plaintiff said she had lived in Michigan her whole life and was familiar with wintery conditions. She also acknowledged that there was 2 to 3 inches of snow on the grass and that it was cold that morning. She also said the light in front of her apartment complex was working. Given the circumstances the morning of the incident, plaintiff could have reasonably gleaned the existence of the icy sidewalk, as it "would have alerted an average user of ordinary intelligence to discover the danger on casual inspection." *Buhalis*, 296 Mich App at 695.

Defendant also argues that even if the icy condition was open and obvious, there were special aspects that would nonetheless impute liability to defendant. This argument fails.

"[L]iability does not arise for open and obvious dangers *unless special aspects* of a condition make even an open and obvious risk *unreasonably dangerous*." *Bullard v Oakwood*

*Annapolis Hosp*, 308 Mich App 403, 410; 864 NW2d 591 (2014) (alteration in original). "[A]n open and obvious hazard that ordinarily precludes liability can have special aspects that give rise to liability in one of two ways: (1) the hazard is, in and of itself, unreasonably dangerous or (2) the hazard was rendered unreasonably dangerous because it was effectively unavoidable for the injured party." *Id*. Plaintiff only claims that the hazard was effectively unavoidable. This argument fails.

We have defined unavoidability as "an *inability to be avoided*, an *inescapable* result, or the *inevitability* of a given outcome." *Id*. at 411-412. This means the hazard "must truly be, for all practical purposes, one that a person is required to confront under the circumstances." *Id*. at 412 (quotation marks and citation omitted). The icy sidewalk was in no way inescapable or a hazard that plaintiff was required to confront. Reed had used the back entrance just minutes before plaintiff's fall, and Reed did not have any issue walking across the sidewalk. Plaintiff just as easily could have used the back entrance. She, however, argues that the back entrance was also icy. While Reed claimed the back entrance was icy, he also testified that he did not slip when he crossed the back-entrance sidewalk. In sum, there is nothing inescapable or inevitable about plaintiff's accident.[1]

Affirmed.

/s/ Kathleen Jansen
/s/ Mark J. Cavanagh
/s/ Thomas C. Cameron

---

[1] Because the icy hazard was open and obvious without special aspects making the hazard unreasonably dangerous, it is unnecessary to analyze whether defendant had notice of the hazardous condition or whether there was sufficient evidence to show that the ice caused the fall.