# STATE OF MICHIGAN

# COURT OF APPEALS

ESTATE OF LEE F. HARTIN, JR., by DAWN M. SIMONS, Personal Representative,

UNPUBLISHED
December 14, 2017

Plaintiff-Appellant,

GALLAGHER BASSETT SERVICES, INC.,

Intervening-Plaintiff,

v

No. 337216
Jackson Circuit Court
LC No. 15-003245-NO

VISTA GRANDE VILLA,

Defendant-Appellee.

Before: MARKEY, P.J., and HOEKSTRA and RONAYNE KRAUSE, JJ.

PER CURIAM.

In this premises liability action, plaintiff appeals as of right the trial court order granting summary disposition to defendant under MCR 2.116(C)(10). Because the ice in defendant's parking lot was open and obvious and the ice was not effectively unavoidable, we affirm.

Defendant Vista Grande Villa is a retirement community in Jackson, Michigan. In January of 2014, decedent Lee F. Hartin, Jr. was employed by a company called Sodexo, which provided food services for defendant. Hartin worked for Sodexo in defendant's kitchen. In the late afternoon on January 16, 2014, Hartin exited defendant's building through the employee door near the loading dock and proceeded to walk into the parking lot where he slipped and fell on ice. As a result of his fall, Hartin broke his ankle, for which he later underwent surgery. Following surgery, he suffered a pulmonary embolism, which caused his death.

On November 25, 2015, Hartin's sister, Dawn Simons, acting as personal representative of Hartin's estate, filed the current lawsuit against defendant. The complaint alleged that Hartin "slipped on a hidden patch of black ice" while walking from defendant's building to his car in the employee parking lot. According to the complaint, the black ice constituted an unreasonably dangerous condition and defendant acted negligently by allowing ice to accumulate, by failing to warn Hartin of the danger, and by failing to take reasonable measures, in a reasonable time, to remove the hazard. Defendant moved for summary disposition under MCR 2.116(C)(10).

-1-

The trial court granted defendant's motion for summary disposition, concluding that the ice was an open and obvious danger in light of indicia of hazardous conditions, including freezing temperatures and snow on the ground. Based on the availability of alternate exits from the building, the trial court also rejected plaintiff's argument that the ice was effectively unavoidable. Plaintiff moved the trial court for reconsideration, which the trial court denied. Plaintiff now appeals as of right.

On appeal, plaintiff contends that the trial court erred by granting defendant's motion for summary disposition. According to plaintiff, questions of fact remain regarding whether the black ice can be considered an open and obvious hazard because the ice was not visible to individuals at the scene immediately after Hartin's fall and the evidence was conflicting in terms of the weather conditions. Additionally, plaintiff maintains that, even if the ice was open and obvious, it was effectively unavoidable because plaintiff was an employee using the designated employee door on his way to the employee parking lot.

We review de novo a trial court's decision to grant a motion for summary disposition. *Miller v Purcell*, 246 Mich App 244, 246; 631 NW2d 760 (2001). A motion under MCR 2.116(C)(10) tests the factual support for a claim, and the motion is properly granted if there is no genuine issue as to any material fact. *Bagby v Detroit Edison Co*, 308 Mich App 488, 490; 865 NW2d 59 (2014). "When ruling on a motion brought under MCR 2.116(C)(10), the court must consider the affidavits, pleadings, depositions, admissions, and other documentary evidence submitted by the parties in the light most favorable to the party opposing the motion." *The Cadle Co v City of Kentwood*, 285 Mich App 240, 247; 776 NW2d 145 (2009). "A genuine issue of material fact exists when reasonable minds could differ on a material issue." *Braverman v Granger*, 303 Mich App 587, 596; 844 NW2d 485 (2014).

"In a premises liability action, a plaintiff must prove the elements of negligence: (1) the defendant owed the plaintiff a duty, (2) the defendant breached that duty, (3) the breach was the proximate cause of the plaintiff's injury, and (4) the plaintiff suffered damages." *Benton v Dart Props, Inc*, 270 Mich App 437, 440; 715 NW2d 335 (2006). "[T]he existence of a legal duty is a question of law for the court to decide." *Buhalis v Trinity Continuing Care Sers*, 296 Mich App 685, 693; 822 NW2d 254 (2012) (citation and quotation marks omitted). "In general, a premises possessor owes a duty to an invitee to exercise reasonable care to protect the invitee from an unreasonable risk of harm caused by a dangerous condition on the land." *Lugo v Ameritech Corp, Inc*, 464 Mich 512, 516; 629 NW2d 384 (2001). A landowner breaches this duty of care "when the premises possessor knows or should know of a dangerous condition on the premises of which the invitee is unaware and fails to fix the defect, guard against the defect, or warn the invitee of the defect." *Hoffner v Lanctoe*, 492 Mich 450, 460; 821 NW2d 88 (2012).

Generally, "a landowner does not have to protect invitees from open and obvious dangers, because such dangers, by their nature, apprise an invitee of the potential hazard, which the invitee may then take reasonable measures to avoid." *Bullard v Oakwood Annapolis Hosp*, 308 Mich App 403, 409; 864 NW2d 591 (2014) (citation and quotation marks omitted). "Whether a danger is open and obvious depends on whether it is reasonable to expect that an average person with ordinary intelligence would have discovered it upon casual inspection." *Hoffner*, 492 Mich at 461. "The test is objective, and the inquiry is whether a reasonable person in the plaintiff's position would have foreseen the danger, not whether the particular plaintiff

knew or should have known that the condition was hazardous." *Slaughter v Blarney Castle Oil Co*, 281 Mich App 474, 479; 760 NW2d 287 (2008).

"[W]intry conditions, like any other condition on the premises, may be deemed open and obvious." *Hoffner*, 492 Mich at 464. In deciding whether wintry conditions are open and obvious, the inquiry is "whether the individual circumstances, including the surrounding conditions, render a snow or ice condition open and obvious such that a reasonably prudent person would foresee the danger." *Id.* at 464. Even black ice, which is transparent and nearly invisible, may be considered an open and obvious danger, provided that there are "indicia of a potentially hazardous condition." *Janson v Sajewski Funeral Home, Inc*, 486 Mich 934, 935; 782 NW2d 201 (2010); *Slaughter*, 281 Mich App at 483. Indicia of potentially hazardous conditions include, among others, below freezing temperatures, snow on the ground, and precipitation, before or during, a plaintiff's fall. See, e.g., *Cole v Henry Ford Health Sys*, 497 Mich 881; 854 NW2d 717 (2014); *Janson*, 486 Mich at 935. Ultimately, an individual will be "imputed knowledge regarding the existence of a condition as should reasonably be gleaned from all of the senses as well as one's common knowledge of weather hazards that occur in Michigan during the winter months." *Slaughter*, 281 Mich App at 479.

While it is generally true that a premises possessor is not required to protect an invitee from open and obvious dangers, this rule does not apply if the hazard has "special aspects" that make even an open and obvious risk unreasonable. *Hoffner*, 492 Mich at 461; *Lugo*, 464 Mich at 517. One instance in which a special aspect may give rise to liability is when the danger is effectively unavoidable. *Id.* at 463. "[T]he standard for 'effective unavoidability' is that a person, for all practical purposes, must be *required* or *compelled* to confront a dangerous hazard. As a parallel conclusion, situations in which a person has a *choice* whether to confront a hazard cannot truly be unavoidable, or even effectively so." *Id.* at 469 (emphasis in *Hoffner*). "Put simply, the plaintiff must be 'effectively trapped' by the hazard." *Bullard*, 308 Mich App at 412. "The mere fact that a plaintiff's employment might involve facing an open and obvious hazard does not make the open and obvious hazard effectively unavoidable." *Id.*

In this case, Hartin was not deposed before his death, and there is little in the record regarding Hartin's description of his fall. According to medical records, Hartin told medical personnel that he "fell down on ice." See MRE 804(4). Two individuals who worked in the building—Demetrus Heard (a Sodexo employee) and Robert Wight (a maintenance worker for defendant)—went to assist Hartin not long after his fall. Neither Heard nor Wight recalled seeing any ice on the ground where Hartin fell. Despite the paucity of evidence, we will assume for purposes of this appeal that reasonable minds could conclude that Hartin fell on ice and that the ice was black ice.

However, even if the ice was apparently difficult to see, the weather conditions at the time of Hartin's fall demonstrate that there were other indicia of the hazardous condition. In particular, the accident occurred in January, in Michigan; and, Hartin was a longtime resident of Michigan, who would be familiar with the formation of ice in winter. See *Slaughter*, 281 Mich App at 480. According to weather data submitted by the parties, on the date of Hartin's fall,

Jackson had a low temperature of 16.1 degrees, a high of 27.1, and a mean temperature of 21.7 degrees.[1] Heard and Simons confirmed that it was "cold," and Wight could not remember a specific temperature but he thought it was in the "low 30s," "right around 32 degrees." There had also been snow in Jackson during the week of Hartin's fall, and snow remained on the ground. Heard—who was present at the scene where Hartin fell—testified that, although he could not remember if it was actively snowing when he went outside to assist Hartin, there was "snow on the ground." More generally, Simons confirmed that it had snowed in Jackson during the days before Hartin's fall and that there was still snow on the ground.[2] These wintery conditions, including below freezing temperatures coupled with snow on the ground, would alert an average user of ordinary intelligence to the potentially icy condition in the parking lot. See *Cole*, 497 Mich 881; *Janson*, 486 Mich at 935. Thus, the danger of black ice was open and obvious.

In contrast, in attempting to create a material question of fact, plaintiff relies heavily on Wight's testimony to the effect that bad weather "came up fast" on the afternoon of Hartin's fall. However, Wight did not contradict the evidence of freezing temperatures and snow on the ground; and, his testimony does not create a material question of fact. For the most part, Wight stated that he did not recall the weather. He did not remember if it snowed in the days before Hartin's fall, he did not recall if there was snow or ice on the ground, and he did not recall if it was actively snowing when he first went outside. At most, insofar as Wight testified that some

---

[1] On appeal, plaintiff claims that the weather data should not be considered because the data constitutes inadmissible hearsay for which no foundation was laid. This argument is without merit. First, *both* parties submitted weather data in connection with their summary disposition arguments. Having submitted weather data to the trial court, plaintiff cannot claim on appeal that the trial court's consideration of weather data was improper. See *Genna v Jackson*, 286 Mich App 413, 422; 781 NW2d 124 (2009) ("[E]rror requiring reversal cannot be error to which the aggrieved party contributed by plan or negligence."). Second, with a proper foundation, weather records would be admissible at trial. See MRE 803(6); MCL 600.2124; *Hart v Walker*, 100 Mich 406, 410; 59 NW 174 (1894). As long as there is "a plausible basis" for the admission of the weather records, the trial court did not err by considering the weather data incident to deciding a motion for summary disposition. See *Barnard Mfg Co, Inc v Gates Performance Engg, Inc*, 285 Mich App 362, 373; 775 NW2d 618 (2009). See also MCR 2.116(G)(6). In contrast, we will not consider defendant's newspaper article regarding the road conditions in Jackson on the day of Hartin's fall. Newspapers articles are typically inadmissible hearsay, *Baker v Gen Motors Corp*, 420 Mich 463, 511; 363 NW2d 602 (1984), and defendant has offered no plausible basis for the admission of the article. Because the newspaper article is inadmissible hearsay, it may not be considered when deciding a motion for summary disposition. See *Maiden v Rozwood*, 461 Mich 109, 125; 597 NW2d 817 (1999).

[2] Plaintiff argues on appeal that Simons's deposition testimony should not be considered because, although she was in Jackson on the day of Hartin's fall, she was not at defendant's facility on that date. This concern goes to the weight of Simons's testimony, not its admissibility. See *Ignaszak v McCray Refrigerator Co*, 221 Mich 10, 16; 190 NW 756 (1922). And, the trial court did not err by considering this evidence.

salting was done after Hartin's fall because bad weather conditions "came up fast," his testimony could suggest that the weather may have *worsened* shortly after Hartin's fall.[3]   Nevertheless, Wight did not dispute Heard's and Simons's testimony that it snowed in the days before Hartin's fall and Wight did not contradict Heard's testimony that there was snow on the ground at the time of Hartin's fall.  Whether or not the weather worsened shortly after Hartin's fall, it remains true that, when exiting the building, Hartin confronted indicia of hazardous weather conditions, including below freezing temperatures, snowfall in the days before his fall, and snow on the ground at defendant's facility.  Given these indicia of hazardous conditions in the parking lot, the danger of black ice was open and obvious.  See *Cole*, 497 Mich 881; *Janson*, 486 Mich at 935.

Finally, there is no merit to plaintiff's assertion that the black ice was effectively unavoidable.   According to plaintiff, the ice was effectively unavoidable because, as an employee, Hartin used the designated employee door to exit the building on his way to the designated employee parking lot.  While it is true that Hartin visited the building as an employee, his employee status, on its own, does not render the open and obvious hazard effectively unavoidable. *Bullard*, 308 Mich App at 412.  The correct inquiry is whether Hartin was, for all practical purposes, required or compelled to confront the ice.  See *Hoffner*, 492 Mich at 463. Regardless of Hartin's employee status, it is uncontested that the building contains numerous doors.  And, while there is evidence that the employees typically used the back door to enter and exit, there is no evidence that they were forbidden from using alternative doors or that they were compelled to confront icy conditions outside the employee door.  To the contrary, Heard testified that, if it was slippery or dangerous outside the employee door, he could, as an employee, use a different exit or talk to someone at the front desk about clearing the area.[4]  Wight confirmed that

---

[3] It is somewhat unclear from Wight's testimony whether the conditions of which he spoke "came up fast" before or after Wight's fall.  If before, the worsening winter weather would only provide further indicia of hazardous conditions.

[4] To the extent plaintiff claims that, even if Hartin had used another door, he would have confronted the patch of black ice, this argument is unsupported and undeveloped.  In the trial court, plaintiff offered pictures, taken in September of 2016, which show water in the parking lot, not far from the employee entrance near the loading dock.  However, nothing in the photographs suggests that Hartin would have encountered an icy hazard, or any hazard, had he exited the building through a different door.  Thus, to extent plaintiff relies on *Lymon v Freedland*, 314 Mich App 746, 762-764; 887 NW2d 456 (2016), this reliance is misplaced because that case involved a situation in which *all* routes to the home were covered in ice and snow, meaning that the plaintiff had no choice but to confront an open and obvious danger because she did not have the option of abandoning her elderly patient.  In contrast, there is no evidence of ice or other hazards on the routes from other exits to Hartin's vehicle.  And, in any event, regardless of what door he used, according to Heard's testimony, employees had the ability to talk to someone in the building about addressing dangerous or slippery conditions outside.  Cf. *Bullard*, 308 Mich App at 413 ("[H]e had the option of speaking with his employer . . . regarding the conditions on the roof.").  Insofar as plaintiff briefly asserts that additional discovery is necessary regarding the photographs and water in the parking lot, it does not appear that further discovery has a reasonable chance of uncovering support for plaintiff's

the maintenance crew salted "problem areas" in response to complaints. Given the availability of other options, including alternative routes and the ability to speak with someone about dangerous conditions, Hartin was not effectively trapped by the hazard. See *Bullard*, 308 Mich App at 413; *Corey v Davenport Coll of Bus*, 251 Mich App 1, 6; 649 NW2d 392 (2002). There was nothing inevitable or inescapable about Hartin's decision to exit the employee door and confront the black ice, and thus the black ice cannot be considered effectively unavoidable. See *Hoffner*, 492 Mich at 463.

Because the black ice was open and obvious and not effectively unavoidable, the trial court did not err by granting defendant's motion for summary disposition under MCR 2.116(C)(10).

Affirmed. Having prevailed in full, defendant may tax costs pursuant to MCR 7.219.

/s/ Jane E. Markey
/s/ Joel P. Hoekstra
/s/ Amy Ronayne Krause

---

claims, and thus summary disposition was appropriate. See *Peterson Novelties, Inc v City of Berkley*, 259 Mich App 1, 25; 672 NW2d 351 (2003).