# STATE OF MICHIGAN

# COURT OF APPEALS

WILLIAM BASACCHI,

Plaintiff-Appellee,

v

FAWZI SIMON, INC.,

Defendant,

and

SIMON LAND DEVELOPMENT GROUP LLC,

Defendant-Appellant.

UNPUBLISHED
January 17, 2017

No. 329503
Oakland Circuit Court
LC No. 2014-142733-NO

Before: RIORDAN, P.J., and FORT HOOD and SERVITTO, JJ.

PER CURIAM.

In this premises liability action, defendant Simon Land Development Group LLC appeals by leave granted the trial court's order denying its motion for summary disposition under MCR 2.116(C)(10).[1] We reverse and remand for entry of an order granting defendant's motion for summary disposition.

## I. FACTUAL BACKGROUND

On July 14, 2014, just after sunset, plaintiff rode his bicycle, which was not equipped with a light, to defendant's gas station to purchase some snacks. It was dark outside at the time, and plaintiff had never been to that gas station previously.

As plaintiff approached the station, he noticed that the front area was busy. In order to avoid coming into contact with the pedestrians and vehicles, plaintiff decided to ride his bike to the back of the station. As he approached the rear, he noticed that the area was darker than the

---

[1] *Basacchi v Fawzi Simon Inc*, unpublished order of the Court of Appeals, entered November 4, 2015 (Docket No. 329503).

-1-

front of the station because it was not illuminated by artificial lighting from streetlights or ambient lighting from vehicles in the front of the station. Plaintiff stated at his deposition that it was "very dark," but he still could see where he was going because "[t]he front of the building was lit. It cast some light to the back, not much." Despite the dim conditions, plaintiff decided to proceed to the back area in order to avoid the activity in the front. He was "looking ahead" or "straight forward" as he was traveling between 10 and 15 miles per hour.

Suddenly, the back tire of his bike dropped inside the edge of a recessed drain cover[2] sitting several inches below the pavement, causing him to lose control of his bicycle. At his deposition, plaintiff testified that he saw the drain cover "[a]t the last instant" before he encountered it and immediately recognized it as a drain cover, but he was not able to see how big it was and "[d]id not expect the drop."[3] He tried to brake and regain control, but was unable to do so. He then fell over the right side of his handlebars. As a result of the fall, plaintiff suffered two broken fingers, his thumbnail was ripped off, and he had some scrapes and bruises.

Photographs of the drain cover and the immediate area surrounding it show that it was in a deteriorated state. It was sunken, sitting several inches lower than the pavement, and there was a gap between the cover and the pavement around the edge of the cover. There also were cracks in the surrounding cement and foliage growing over portions of the cover. The "drop" between the pavement and the sunken drain cover varied from four and a half to seven inches depending on the area measured.

Plaintiff initiated this premises liability action, claiming that defendant was liable for his injuries. Defendant moved for summary disposition pursuant to MCR 2.116(C)(10), arguing, *inter alia*, that it did not owe plaintiff any duty because the danger posed by the sunken drain cover was a common, open and obvious hazard that lacked any special aspects making it unreasonably dangerous. Defendant also contended that the darkness itself was an open and obvious condition. In response, plaintiff argued that a genuine issue of material fact existed regarding whether the sunken drain cover was open and obvious in light of the significant drop between the pavement and the drain cover and the dark, unlit conditions under which plaintiff encountered it. Alternatively, if the court determined that the hazard was open and obvious, plaintiff contended that the darkness was a special aspect that created an unreasonable risk of harm and made the sunken drain cover a hidden danger.

After holding a hearing, the trial court denied defendant's motion, stating that, viewing the evidence in the light most favorable to plaintiff, the hazard was "not your basic drain," it had "become depressed" with "gaping holes around the side," and "[i]t's almost as if it creates an

---

[2] The parties refer to the alleged hazard as a drain hole cover, drain cover, or manhole cover. We will refer to the hazard as a "drain cover."

[3] Later in his testimony, plaintiff changed his position, ultimately stating that he did not see the sunken drain cover before he struck it, but saw it when he hit the drain cover immediately before he fell. He also testified that he did not see the drain cover beforehand because it was "too dark."

optical illusion." The court also noted that plaintiff was not arguing that the darkness alone rendered the defect no longer open and obvious; rather, plaintiff was arguing that the very nature of the sunken drain cover rendered it not open and obvious. In addition, the court noted that published Michigan caselaw had held "that darkness can create a jury question [as to] whether . . . the hazard was open and obvious."

## II. STANDARD OF REVIEW

A trial court's grant or denial of a motion for summary disposition is reviewed *de novo*. *Hoffner v Lanctoe*, 492 Mich 450, 459; 821 NW2d 88 (2012). "A motion made under MCR 2.116(C)(10) tests the factual sufficiency of a claim, and when the proffered evidence fails to establish a genuine issue of material fact, the moving party is entitled to judgment as a matter of law." *Id.* "When deciding a motion for summary disposition under this rule, a court must consider the pleadings, affidavits, depositions, admissions, and other documentary evidence then filed in the action or submitted by the parties in the light most favorable to the nonmoving party." *Bialick v Megan Mary, Inc*, 286 Mich App 359, 362; 780 NW2d 599 (2009), citing MCR 2.116(G)(5), and *Wilson v Alpena Co Rd Comm*, 474 Mich 161, 166; 713 NW2d 717 (2006). "There is a genuine issue of material fact when reasonable minds could differ on an issue after viewing the record in the light most favorable to the nonmoving party." *Allison v AEW Capital Mgt, LLP*, 481 Mich 419, 425; 751 NW2d 8 (2008). "When no material issues of fact exist, the existence of a legal duty is a question of law for the court to decide." *Hoffner*, 492 Mich at 461 n 12.

## III. ANALYSIS

Defendant argues that it had no legal duty to warn or protect plaintiff from the danger presented by the sunken drain cover because it was open and obvious and lacked special aspects that made it unreasonably dangerous. Plaintiff contends that the danger was not open and obvious, but, even if it was, the depth of the drain cover and the darkness under which he encountered it constitute special aspects that made the condition unreasonably dangerous. We agree with defendant that there is no genuine issue of material fact that the sunken drain cover was open and obvious and lacked special aspects, such that defendant was entitled to summary disposition as a matter of law.

"A plaintiff who brings a premises liability action must show (1) the defendant owed [him] a duty, (2) the defendant breached that duty, (3) the breach was the proximate cause of [his] injury, and (4) [he] suffered damages." *Bullard v Oakwood Annapolis Hosp*, 308 Mich App 403, 408; 864 NW2d 591 (2014) (quotation marks and citation omitted; alternations in original). "In Michigan, a premises possessor owes a duty to use reasonable care to protect invitees from an unreasonable risk of harm caused by dangerous conditions on the premises . . ."[4] *Hoffner*, 492 Mich at 455. See also *id*. at 460; *Lugo v Ameritech Corp, Inc*, 464 Mich 512, 516; 629 NW2d 384 (2001). "Michigan law provides liability for a breach of this duty of ordinary care

---

[4] The parties do not dispute that plaintiff, a customer of defendant's gas station, was on defendant's property as an invitee.

when the premises possessor knows or should know of a dangerous condition on the premises of which the invitee is unaware and fails to fix the defect, guard against the defect, or warn the invitee of the defect." *Hoffner*, 492 Mich at 460.  See also *Lowrey v LMPS & LMPH, Inc*, ___ Mich ___, ___; ___ NW2d ___ (2016) (Docket No. 153025); slip op at 6, quoting *Hoffner*, 492 Mich at 460.  But "[t]he possessor of land owes no duty to protect or warn of dangers that are open and obvious because such dangers, by their nature, apprise an invitee of the potential hazard, which the invitee may then take reasonable measures to avoid." *Hoffner*, 492 Mich at 460-461 (quotation marks and citations omitted).  See also *Riddle v McLouth Steel Products Corp*, 440 Mich 85, 94; 485 NW2d 676 (1992) ("[A] possessor of land does not owe a duty to protect his invitees . . . [from] dangers that are so obvious and apparent that an invitee may be expected to discover them himself.").  "Whether a danger is open and obvious depends on whether it is reasonable to expect that an average person with ordinary intelligence would have discovered it upon casual inspection.  This is an *objective standard*, calling for an examination of the objective nature of the condition of the premises at issue." *Hoffner*, 492 Mich at 461 (quotation marks and citations omitted).

However, when there is something unusual about an open and obvious condition due to its "character, location, or surrounding conditions, then the duty of the possessor of land to exercise reasonable care remains.  If the proofs create a question of fact that the risk of harm was unreasonable, the existence of duty as well as breach become questions for the jury to decide." *Bertrand v Alan Ford, Inc*, 449 Mich 606, 617; 537 NW2d 185 (quotation marks and citations omitted).  Similarly, "[u]nder [the] limited ['special aspects'] exception [to the open and obvious doctrine], liability may be imposed only for an 'unusual' open and obvious condition that is 'unreasonably dangerous' because it 'present[s] an extremely high risk of severe harm to an invitee' in circumstances where there is 'no sensible reason for such an inordinate risk of severe harm to be presented.' " *Hoffner*, 492 Mich at 462 (citation omitted).

First, we disagree with the trial court's finding that there was a genuine issue of material fact as to whether the nature of the hazard presented by the sunken drain cover was open and obvious.  The photographs of the drain cover and the immediate area surrounding it in the lower court record reveal a deteriorated, recessed drain cover with a plainly visible "drop" or depression of several inches below the pavement.  Notably, the drain cover is surrounded by a large area of light-colored pavement that makes the area distinct from the rest of the dark-colored pavement in the lot.  Thus, even though there is a significant "drop" between the sunken drain cover and the rest of the pavement, the photographs reveal that the danger it presents was readily observable, at least under the normal daylight conditions depicted in the pictures.  Further, a sunken drain cover presents a common, everyday hazard—equivalent to a pothole or unevenness in pavement—which generally constitutes, by its very nature, an open and obvious condition that a reasonably prudent person would ordinarily be expected to discover.[5]  Plaintiff also testified

---

[5] See *Lugo*, 464 Mich at 517, 523 ("[P]otholes in pavement are an 'everyday occurrence' that ordinarily should be observed by a reasonably prudent person."); *Bertrand*, 449 Mich at 614-621 (explaining when steps or differences in floor levels are open and obvious); *Weakley v City of Dearborn Heights*, 240 Mich App 382, 385; 612 NW2d 428 (2000) ("[S]teps and differing floor levels, such as . . . uneven pavement . . . , are not ordinarily actionable *unless* unique

during his deposition that he immediately recognized the drain cover when he noticed it, although he did not realize the magnitude of the "drop." Thus, even in viewing the evidence presented below in the light most favorable to plaintiff, reasonable minds could not differ in concluding that an average person with ordinary intelligence would discover the sunken drain cover and appreciate the danger it posed upon casual inspection. See *Allison*, 481 Mich at 425.

Next, the evidence shows that there is nothing about the drain cover's character, location, or surrounding conditions that demonstrates a question of fact as to whether the risk of harm posed by the cover was unreasonable. See *Bertrand*, 449 Mich at 617. Likewise, there is nothing about the drain cover or the surrounding circumstances that constitutes a special aspect removing the hazard from the scope of the open and obvious doctrine. See *Hoffner*, 492 Mich at 461-462. Michigan law recognizes "two instances in which the special aspects of an open and obvious hazard could give rise to liability: when the danger is *unreasonably dangerous* or when the danger is *effectively unavoidable*." *Hoffner*, 492 Mich at 463. Plaintiff does not contend that the effectively unavoidable exception is implicated here. See *id.* at 456, 465. To qualify under the unreasonably dangerous exception, the condition must present an "'extremely high risk of severe harm to an invitee,'" *id.* at 462 (quotation marks and citation omitted), such as "a substantial risk of death or severe injury," *Lugo*, 464 Mich at 518-519. "[N]either a common condition nor an avoidable condition is uniquely dangerous." *Hoffner*, 492 Mich at 463, citing *Lugo*, 464 Mich at 520.

Plaintiff claims that the danger posed by the sunken drain cover was not open and obvious because he encountered it in the darkness of night in the back area of the gas station, which was not illuminated with streetlights or ambient lighting from vehicles in the front of the station, so that the darkness prevented him from seeing the hazard or appreciating the gravity of the "drop." Plaintiff is correct that this Court has previously concluded that darkness may render a hazard—which would have been open and obvious in a well-lit space—not open and obvious if an average person would have been unable to discover it upon casual inspection under the circumstances. See, e.g., *Abke v Vandenberg*, 239 Mich App 359, 362-363; 608 NW2d 73 (2000); *Knight v Gulf & Western Props, Inc*, 196 Mich App 119, 126; 492 NW2d 761 (1992).[6] Nevertheless, we disagree with plaintiff that the ordinary nighttime darkness in this case rendered the sunken drain cover not open and obvious. The nighttime darkness and lack of lighting in this case are distinguishable from the facts in *Abke* and *Knight* and do not constitute a *unique* circumstances that rendered the drain cover not open and obvious or made it unreasonably dangerous. *Abke* and *Knight* concerned plaintiffs who fell due to unexpected drop-offs from indoor loading docks in dark areas, which constituted hazards much more significant and dangerous than the slight drop between the pavement and drain cover in this case. Compare *Abke*, 239 Mich App at 360, 362, and *Knight*, 196 Mich App at 121, 127-128, with *Lugo*, 464 Mich at 520; *Bertrand*, 449 Mich at 616; *Weakley v City of Dearborn Heights*, 240 Mich App circumstances surrounding the area in issue made the situation unreasonably dangerous.") (quotation marks and citation omitted), remanded for reconsideration on other grounds 463 Mich 980 (2001); *Novotney v Burger King Corp*, 198 Mich App 470, 474-477; 499 NW2d 379 (1993) (discussing the open and obvious nature of a sidewalk with a handicap access ramp).

[6] Accordingly, we reject defendant's claim that darkness never can change the character of an otherwise open and obvious condition.

382, 385; 612 NW2d 428 (2000), remanded for reconsideration on other grounds 463 Mich 980 (2001); *Novotney v Burger King Corp*, 198 Mich App 470, 474; 499 NW2d 379 (1993).

Moreover, as defendant emphasizes, inadequate lighting may constitute an open and obvious condition, in and of itself, that an invitee reasonably may be expected to discover. *Singerman v Muni Serv Bureau, Inc*, 455 Mich 135, 141; 565 NW2d 383 (1997). In *Singerman*, the plaintiff contended that his injuries were caused by inadequate lighting in a hockey rink, which prevented him from observing and avoiding a hockey puck. *Id*. at 141. It was undisputed that the inadequate lighting was an open and obvious condition. *Id*. The Michigan Supreme Court explained that when poor lighting is an open and obvious condition,

> the question for the courts to decide is whether the risk of harm remains unreasonable, despite its obviousness or despite the invitee's knowledge of the danger. If the court finds that the risk is still unreasonable, then the court will consider whether the circumstances are such that the invitor is required to undertake reasonable precautions. If so, then the issue becomes the standard of care and is for the jury to decide. [*Id*. at 142-143.]

Consequently, the Court concluded:

> [H]ere there was nothing unusual about the inadequate lighting in the hockey rink to cause such a duty to remain. Plaintiff was an adult and an experienced hockey player. The lighting in the rink is alleged to have been consistently inadequate, not subject to unexpected fluctuations or other changes. There was nothing to prevent plaintiff from realizing that the rink was inadequately lighted. Nor was there any chance that he would forget the potentially hazardous condition, because the condition was constantly before him. Finally, plaintiff was not compelled to use the rink for work, or profit, or any other overriding or substantial motivation. He chose to participate in a dangerous sport under conditions that he knew to be dangerous. [*Id*. at 144.]

Similarly, in this case, plaintiff explicitly stated in his deposition testimony that he recognized that the area was dark and not well lit as he rode his bicycle into the back area of the gas station. Nonetheless, he made a conscious decision to continue riding into the darkness instead of changing his course and riding toward the well-lit area at the front of the station. In addition, plaintiff stated during his deposition that "the only way [he] would [have] see[n] this manhole cover" were if he had been looking down at the ground as he was riding, and that he readily recognized the hazard as a drain cover when he noticed it either (1) the instant before he hit it, or (2) at the moment he hit it immediately before he fell. Through this testimony, plaintiff implicitly acknowledged that the hazard and the risk it presented would have been visible to him, or to any other average person with ordinary intelligence, upon casual inspection by looking down toward the pavement before proceeding. Plaintiff also expressly acknowledged that he was looking straight ahead and not at the ground as he was riding. Given the fact that darkness always follows the setting of the sun, and that nighttime darkness does not subside until the sun invariably rises again at dawn, an average individual of ordinary intelligence would have been on notice that it was necessary to advance cautiously into the darkened area behind the station in case he or she encountered a common, everyday hazard, such as a drop in the pavement. Cf.

*Hoffner*, 492 Mich at 460-461 ("The possessor of land owes no duty to protect or warn of dangers that are open and obvious because such dangers, by their nature, apprise an invitee of the potential hazard, which the invitee may then take reasonable measures to avoid.") (quotation marks and citation omitted).

Moreover, there is absolutely no indication that sunken drain cover was unreasonably dangerous, even in the dark. See *Hoffner*, 492 Mich at 462-463. Unlike "an unguarded thirty foot deep pit in the middle of a parking lot," which has been recognized as an unreasonably dangerous condition, *Lugo*, 464 Mich at 518, "[f]alling several feet to the ground is not the same as falling an extended distance," and "it cannot be expected that a typical person [falling a distance of several feet] would suffer severe injury or a substantial risk of death," *Corey v Davenport College of Business (On Remand)*, 251 Mich App 1, 7; 649 NW2d 392 (2002) (quotation marks and citation omitted; second alteration in original).

Accordingly, for all of these reasons, we reject plaintiff's claim that the darkness and lack of illumination rendered the sunken drain cover not open and obvious, presented an unreasonable risk of harm, or constituted a special aspect that removed the sunken drain cover from the scope of the open and obvious doctrine. Plaintiff failed to proffer any evidence indicating that it would be unreasonable to expect an average person with ordinary intelligence to discover the hazardous nature of the sunken drain in ordinary nighttime darkness, see *Hoffner*, 492 Mich at 461, or that the sunken drain cover was unreasonably dangerous, see *id*. at 462.

Because there is no genuine issue of material fact, the trial court erred in denying defendant's motion for summary disposition. See *id*. at 459.[7]

IV. CONCLUSION

The trial court erred in denying defendant's motion for summary disposition, as there is no genuine issue of material fact that the sunken drain cover was an open and obvious condition without any special aspects.

Reversed and remanded for entry of an order granting defendant's motion for summary disposition. We do not retain jurisdiction.

/s/ Michael J. Riordan
/s/ Karen M. Fort Hood
/s/ Deborah A. Servitto

---

[7] In light of this conclusion, we need not address defendant's alternative argument that summary disposition was appropriate on the basis that it lacked notice of an unreasonably dangerous condition on its premises. The trial court did not address this issue, and it is not necessary for a proper determination of this case. *Smith v Foerster-Bolser Constr, Inc*, 269 Mich App 424, 427; 711 NW2d 421 (2006).