# STATE OF MICHIGAN

# COURT OF APPEALS

GARY KALOSIS,

Plaintiff-Appellant,

v

WOODS OF LIVONIA ASSOCIATION,

Defendant/Cross-Plaintiff-Appellee,

and

KEARNS BROTHERS, INC., and APARTMENT SERVICES COMPANY,

Defendants/Cross-Defendants-Appellees,

and

ALLIED GUTTER COMPANY, INC.,

Defendant-Appellee.

UNPUBLISHED
March 16, 2017

No. 329331
Wayne Circuit Court
LC No. 13-006843-NO

Before: RIORDAN, P.J., and METER and FORT HOOD, JJ.

PER CURIAM.

Plaintiff, Gary Kalosis, was injured when he slipped and fell on black ice while entering his car, which was parked underneath a carport at his condominium complex. Plaintiff brought this action against (1) the condominium association, Woods of Livonia Association ("Woods"); (2) Kearns Brothers, Inc. ("Kearns"), which had contracted with Woods approximately three years earlier to install gutters along the front side of the carport; (3) Allied Gutter Company, Inc. ("Allied"), the company that actually installed the gutters pursuant to a subcontract with Kearns; and (4) Apartment Services, Inc. ("Apartment Services"), which had contracted with Woods to provide snow and ice removal services for the condominium complex. The trial court entered separate orders granting summary disposition in favor of each defendant pursuant to MCR 2.116(C)(10).

-1-

Plaintiff appeals as of right, challenging all four orders. We affirm.

## I. FACTUAL BACKGROUND

On January 28, 2013, at approximately 10:30 a.m., plaintiff left his condominium unit in Livonia, Michigan, to attend a dental appointment. The previous day, at least two inches of snow had fallen, and Apartment Services had plowed and salted the premises, including the asphalt areas near the carport where plaintiff parks his car. Based on Apartment Services' documentation, the company salted the premises again on January 28, 2013, between 8:50 a.m. and 9:30 a.m.

Before leaving his unit, plaintiff noticed that it was cold outside and saw ice and snow on the ground, so he deliberately selected shoes with nonskid soles. After exiting his condominium unit, plaintiff walked straight to the carport where he always parks his car. Plaintiff did not notice slippery conditions when he entered the carport, and he had not previously encountered slippery conditions or noticed any leakage or drainage issues in that area. When plaintiff reached his car, he opened the car door and lifted his right foot inside the car. At that point, his body pivoted and his left leg went out from underneath him, causing him to fall to the ground. Plaintiff admitted that he did not look at the ground before he fell because his attention was focused on the car. However, he confirmed that he fell because the ground was slippery, and he recalled getting wet from water on the ground after he fell. He did not see or feel any salt on the ground in that area. However, photographs taken shortly after plaintiff's fall show that some salt had been distributed underneath the carport.

In 2010, Woods had installed gutters along the front side of the carports. According to Michael Pavlichek, an employee of Majestic Condominium Management, LLC, who manages Woods' property, the gutters were installed because water and snow would fall off the roof on the front side of the carports and create piles of snow and ice on the ground that residents would have to walk over in order to reach their vehicles. Woods contracted with Kearns to install the gutters. Allied subsequently installed the gutters pursuant to a subcontract with Kearns. Although Pavlichek was aware that water and snow also would fall off the roof on the back side of the carports, he testified that Woods did not consider installing gutters along the back sides in light of their limited budget at the time and the fact that the issue requiring the gutters only involved the front sides of the carports. Accordingly, there were no discussions with Kearns about installing gutters along the back sides. Pavlichek believed that the installed gutters effectively prevented snow from dropping to the ground and diverted water to a downspout. After the gutters were installed, the condominium association's board of directors accepted the work, and neither Kearns nor Allied had any further responsibilities with the gutters. Pavlichek denied that he ever saw obvious pooling of water around the carports, and he believed that the ground was graded so that water flowed away from the carports.

In May 2013, plaintiff initiated this action, alleging that he slipped and fell on black ice and sustained serious injuries. His initial complaint asserted premises liability and negligence claims against Woods. However, plaintiff later filed amended complaints that raised additional claims against Apartment Services, Kearns, and Allied after the defendants filed notices of nonparty fault. In sum, plaintiff alleged the following: (1) overall, the failure to install gutters along the back sides of the carports allowed snow and water to accumulate underneath the

-2-

carports; (2) Woods was liable for failing to maintain the premises in a reasonably safe condition; (3) Kearns and Allied were liable for failing to recommend that gutters be installed along the back sides of the carports; and (4) Apartment Services was liable for failing to properly apply salt to the areas near the carports.

All four defendants filed motions for summary disposition pursuant to MCR 2.116(C)(10). The trial court granted summary disposition in favor of Woods, Allied, and Apartment Services, but initially denied Kearns's motion for summary disposition. Shortly before trial, after further discovery, Kearns requested leave to renew its motion for summary disposition. The trial court granted the requested leave and ultimately granted Kearns' renewed motion for summary disposition.

Plaintiff now appeals the dismissal of all four defendants.

## II. STANDARD OF REVIEW

This Court reviews *de novo* a trial court's grant or denial of summary disposition. *Moraccini v Sterling Hts*, 296 Mich App 387, 391; 822 NW2d 799 (2012). "A motion under MCR 2.116(C)(10) tests the factual sufficiency of the complaint." *Cannon Twp v Rockford Pub Sch*, 311 Mich App 403, 411; 875 NW2d 242 (2015). When reviewing such a motion, this Court may only consider, in the light most favorable to the party opposing the motion, the evidence that was before the trial court, which consists of "the 'affidavits, together with the pleadings, depositions, admissions, and documentary evidence then filed in the action or submitted by the parties.'" *Calhoun Co v Blue Cross Blue Shield Michigan*, 297 Mich App 1, 11; 824 NW2d 202 (2012), quoting MCR 2.116(G)(5). "The trial court is not permitted to assess credibility, weigh the evidence, or resolve factual disputes" when ruling on a motion for summary disposition. *Wells Fargo Bank, NA v SBC IV REO, LLC*, ___ Mich App ___, ___; ___ NW2d ___ (2016) (Docket No. 328186); slip op at 8 (quotation marks and citation omitted). Under MCR 2.116(C)(10), "[s]ummary disposition is appropriate if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law." *Latham v Barton Malow Co*, 480 Mich 105, 111; 746 NW2d 868 (2008). "There is a genuine issue of material fact when reasonable minds could differ on an issue after viewing the record in the light most favorable to the nonmoving party." *Allison v AEW Capital Mgt, LLP*, 481 Mich 419, 425; 751 NW2d 8 (2008).

We also review questions of law *de novo*. *Loweke v Ann Arbor Ceiling & Partition Co, LLC*, 489 Mich 157, 162; 809 NW2d 553 (2011). "Whether a defendant is under a legal obligation to act for a plaintiff's benefit—i.e., whether a defendant owes a particular plaintiff a duty—is a question of law." *Id*.

## III. WOODS OF LIVONIA ASSOCIATION

Plaintiff contends that the trial court improperly granted summary disposition in favor of Woods because (1) the ice on which he fell was not open and obvious, and (2) Woods cannot avoid liability for a condition that it created or permitted to exist because it had actual or constructive notice of such a condition. We disagree. The trial court properly granted summary

disposition because there was no genuine issue of material fact as to whether the ice was open and obvious.

"A plaintiff who brings a premises liability action must show (1) the defendant owed [him] a duty, (2) the defendant breached that duty, (3) the breach was the proximate cause of [his] injury, and (4) [he] suffered damages." *Bullard v Oakwood Annapolis Hosp*, 308 Mich App 403, 408; 864 NW2d 591 (2014) (quotation marks and citation omitted; alternations in original). The parties agree that plaintiff was an invitee on Woods' premises when he fell. "In Michigan, a premises possessor owes a duty to use reasonable care to protect invitees from an unreasonable risk of harm caused by dangerous conditions on the premises . . . ." *Hoffner v Lanctoe*, 492 Mich 450, 455; 821 NW2d 88 (2012). See also *id*. at 460; *Lugo v Ameritech Corp, Inc*, 464 Mich 512, 516; 629 NW2d 384 (2001). "Michigan law provides liability for a breach of this duty of ordinary care when the premises possessor knows or should know of a dangerous condition on the premises of which the invitee is unaware and fails to fix the defect, guard against the defect, or warn the invitee of the defect." *Hoffner*, 492 Mich at 460. See also *Lowrey v LMPS & LMPH, Inc*, 500 Mich 1, ___; ___ NW2d ___ (2016) (Docket No. 153025); slip op at 6, quoting *Hoffner*, 492 Mich at 460.

But "[t]he possessor of land owes no duty to protect or warn of dangers that are open and obvious because such dangers, by their nature, apprise an invitee of the potential hazard, which the invitee may then take reasonable measures to avoid." *Hoffner*, 492 Mich at 460-461 (quotation marks and citations omitted). See also *Riddle v McLouth Steel Products Corp*, 440 Mich 85, 94; 485 NW2d 676 (1992) ("[A] possessor of land does not owe a duty to protect his invitees . . . [from] dangers that are so obvious and apparent that an invitee may be expected to discover them himself."). "Whether a danger is open and obvious depends on whether it is reasonable to expect that an average person with ordinary intelligence would have discovered it upon casual inspection. This is an *objective standard*, calling for an examination of the objective nature of the condition of the premises at issue." *Hoffner*, 492 Mich at 461 (quotation marks and citations omitted). "[T]he general rule is that a premises possessor is not required to protect an invitee from open and obvious dangers, but, if special aspects of a condition make even an open and obvious risk unreasonably dangerous, the premises possessor has a duty to undertake reasonable precautions to protect invitees from that risk." *Lugo*, 464 Mich at 517.

Plaintiff contends that this case is factually similar to *Slaughter v Blarney Castle Oil Co*, 281 Mich App 474, 475, 482-484; 760 NW2d 287 (2008), a case in which this Court addressed the application of the open and obvious doctrine to a patch of black ice. After considering the logic behind the open and obvious doctrine and the characteristics of black ice, the Court explained:

> The overriding principle behind the many definitions of black ice is that it is either invisible or nearly invisible, transparent, or nearly transparent. Such definition is inherently inconsistent with the open and obvious danger doctrine. Consequently, we decline to extend the doctrine to black ice *without evidence that the black ice in question would have been visible on casual inspection before the fall or without other indicia of a potentially hazardous condition.* [*Id*. at 482-483 (emphasis added).]

Thus, for black ice to constitute an open and obvious condition, it either must be visible upon casual inspection, or other indicia of a potentially hazardous condition must be present. *Id*. at 483. The *Slaughter* Court ultimately held that there was a genuine issue of material fact as to whether the black ice at issue in that case constituted an open and obvious condition based on the following circumstances:

> With regard to whether other evidence of an open and obvious danger existed in this case, there was no snow on the ground, and it had not snowed in a week. Before alighting from her truck, plaintiff did not observe anyone else slip or hold onto an object to maintain his or her balance. She did not see the ice before she fell, and could not readily see it afterwards. Although it was starting to rain at the time of plaintiff's fall, the danger and risk presented by a wet surface is not the same as that presented by an icy surface. Contrary to defendant's assertion that the mere fact of it being wintertime in northern Michigan should be enough to render any weather-related situation open and obvious, reasonable Michigan winter residents know that each day can bring dramatically different weather conditions, ranging from blizzard conditions, to wet slush, to a dry, clear, and sunny day. As such, the circumstances and specific weather conditions present at the time of plaintiff's fall are relevant. We are not persuaded that the recent onset of rain wholly revealed the condition and its danger as a matter of law such that a warning would have served no purpose. [*Id*. at 483-484 (citation omitted; emphasis added).]

This case is distinguishable from *Slaughter* because, by plaintiff's own admission, ice and snow were visibly present outside as he exited his condominium unit. However, plaintiff argues that he had no reason to expect that ice would form under the roof of the carport because that area was not directly exposed to the elements and there was no snow or other indicia of a potentially hazardous condition in that area. Plaintiff's argument is specious, especially given the fact that entire sides of the carport were open to the elements, and photographs taken immediately after the incident clearly show snow and slushy conditions immediately adjacent to plaintiff's parking spot underneath the carport.

Nonetheless, even if we assume, arguendo, that plaintiff did not see any ice or snow nearby, we are not persuaded that the absence of visible snow or ice underneath the carport's roof precludes application of the open and obvious doctrine. The doctrine applies when the weather conditions would alert a plaintiff that there may be a potentially hazardous condition on the ground. In *Janson v Sajewski Funeral Home, Inc*, 486 Mich 934, 935; 782 NW2d 201 (2010), a case involving black ice, the plaintiff's "slip and fall occurred in winter, with temperatures at all times below freezing, snow present around the defendant's premises, mist and light freezing rain falling earlier in the day, and light snow falling during the period prior to the plaintiff's fall in the evening." The Michigan Supreme Court concluded that "[t]hese wintry conditions by their nature would have alerted an average user of ordinary intelligence to discover the danger upon casual inspection." *Id*.

Similarly, here, the temperature was below freezing the previous day and during the night before plaintiff fell on January 28, 2013. The temperature had just begun to rise above freezing earlier in the morning before plaintiff, a life-long Michigan resident, approached his vehicle at

approximately 10:30 a.m. Consistent with the clear presence of snow in the photographs taken immediately after the incident, weather reports indicate that approximately two inches of snow had fallen the previous day. Likewise, plaintiff testified at his deposition that he looked outside before he left and saw that "[i]t was wet and [sic] icy snow. There was snow in the driveway." Significantly, he testified that he decided to wear "nonskid" shoes that are "supposed to be safe for walking in oil, ice, or snow" specifically based on his observations of the wintery conditions outside, and he wore a coat and gloves because he realized that it was cold outside. Plaintiff also testified that snow on the pavement was in his field of vision as he approached the carport and looked in the direction of his car. We have no doubt that these conditions would have alerted an average user of ordinary intelligence to discover, upon casual inspection, a potentially hazardous situation from ice or melting and refreezing snow underneath the open-air carport. See *id.*; *Hoffner*, 492 Mich at 461.

There is no indication that the hazard included any special aspects so that it constituted an unreasonable risk of harm outside the scope of the open and obvious doctrine. See *Hoffner*, 492 Mich at 455; *Bullard*, 308 Mich App at 410-411. The record clearly demonstrates that the icy condition on which plaintiff fell was neither unreasonably dangerous nor effectively unavoidable. See *Hoffner*, 492 Mich at 455, 461-464; *Bullard*, 308 Mich App at 410-414. Thus, the trial court properly granted summary disposition in favor of Woods based on the open and obvious doctrine.[1]

## IV. KEARNS BROTHERS, INC.

Next, plaintiff contends that the trial court improperly granted summary disposition in favor of Kearns based on a lack of causation in light of Pavlichek's testimony. Plaintiff argues that Kearns was negligent when it failed to advise Woods to install gutters along the back sides of the carports. He theorizes that the absence of gutters along the back side allowed snow and water to fall off the roof in the back of his carport and drain toward the front, resulting in an accumulation of water underneath the carport, where it then froze. We reject plaintiff's claims.

To prove negligence against Kearns, plaintiff was required to prove four elements: (1) a duty owed by Kearns to plaintiff; (2) a breach of that duty; (3) causation; and (4) damages. *Case v Consumers Power Co*, 463 Mich 1, 6; 615 NW2d 17 (2000). A party has a common-law duty to exercise reasonable care and avoid harm when it acts, even if that action is related to its obligations under a contract. *Loweke*, 489 Mich at 169-171. Causation consists of two elements: (1) cause in fact and (2) legal, or proximate, cause. *Id.* at 6 n 6.

> Cause in fact requires that the harmful result would not have come about but for the defendant's . . . conduct. A plaintiff must adequately establish cause in fact in order for legal cause or "proximate cause" to become a relevant issue. Whether proximate cause or legal cause is established normally requires examining the

---

[1] In light of our decision affirming summary disposition in favor of Woods on the basis of the open and obvious doctrine, it is unnecessary to address both parties' arguments regarding whether Woods had notice of the hazardous condition.

foreseeability of the consequences and whether the defendant should be held legally responsible for those consequences. [*Auto-Owners Ins Co v Seils*, 310 Mich App 132, 157; 871 NW2d 530 (2015) (quotation marks and citations omitted; omission in original).]

We find no error in the trial court's decision to grant summary disposition in favor of Kearns. The unrebutted evidence in the record indicates that Kearns was hired by Woods solely for the purpose of installing gutters on the front sides of the carports. Plaintiff's theory is that he slipped on frozen water that had fallen from the back of the carport—which had no gutters—and pooled near his car. However, Pavlichek's testimony established that Woods only asked Kearns to provide a quote for installing gutters on the front sides of the carports in order to eliminate water runoff and the piling of snow on that side. Pavlichek specifically explained that Woods never requested, or inquired about, the installation of gutters at the back of the carports because of their limited budget and because they had only received complaints from co-owners regarding falling water and accumulating snow on the front side of the carports, where co-owners entered the carports to access their cars.

Plaintiff suggests that other evidence in the record, including the testimony of Shawn Dunnigan, Kearns' operations manager, demonstrated that Kearns was hired to provide a general professional recommendation regarding the installation of gutters on the carport rooves. Plaintiff's characterization of the record is unsupported. There is no deposition testimony or other evidence indicating that Pavlichek consulted Kearns regarding where to place the gutters in general. To the contrary, Pavlichek's unrebutted testimony shows that Woods only requested the installation of gutters on the front sides of the carports, and he only consulted with Kearns regarding the construction of gutters—and the appropriate materials for that construction—on the front sides because, again, the front sides were the only areas where residents were having issues with falling water and accumulations of snow. Notably, Dunnigan also expressly confirmed that he and Pavlichek never discussed the installation of gutters on the back sides of the carports or a need for diverting water away from the area underneath the carports. Rather, they only discussed the installation of gutters on the front sides of the carports because the condo association "wanted more water control where people enter the carports." Accordingly, there is no genuine issue of material fact that Kearns was not asked to provide a general professional recommendation regarding the installation of gutters on the carports, but was, instead, specifically consulted regarding the front sides of the carports. Thus, Kearns had no duty to provide general recommendations regarding the installation of additional gutters. Cf. *Hill v Sears, Roebuck & Co*, 492 Mich 651, 662-665; 822 NW2d 190 (2012).

Plaintiff argues that the trial court should not have relied solely on Pavlichek's testimony regarding the limited scope of Kearns' work. However, plaintiff did not present any evidence that established a genuine issue of material fact regarding whether Kearns' role was more expansive than Pavlichek's description.

> Where the burden of proof at trial on a dispositive issue rests on a nonmoving party, the nonmoving party may not rely on mere allegations or denials in pleadings, but must go beyond the pleadings to set forth specific facts showing that a genuine issue of material fact exists. If the opposing party fails to present documentary evidence establishing the existence of a material factual

dispute, the motion is properly granted. [*Lowrey*, 500 Mich 1, ___; slip op at 5-6 (quotation marks and citation omitted).]

Plaintiff also takes issue with the fact that the trial court granted Kearns' renewed motion for summary disposition shortly before trial based on Pavlichek's video deposition, taken in anticipation of trial due to his expected unavailability during trial. Plaintiff contends that the trial court erred because it "negated [sic] to take into consideration any other deposition testimony, or the fact that trial had not yet even started." Plaintiff has provided no authority demonstrating that the trial court's decision was procedurally improper. Again, it was incumbent on plaintiff to establish a genuine issue of material fact in response to defendant's motion,[2] and it was not necessary for him to present witnesses at trial or even proffer deposition testimony in order to do so. For example, an affidavit from one or more of the unnamed witnesses to whom plaintiff alludes in his brief on appeal would have been sufficient if the evidence established a genuine issue of material fact. See MCR 2.116(G). Plaintiff proffered no such evidence in response to Kearns' motion. Thus, given plaintiff's failure to meet his burden, we find no error in the trial court's grant of summary disposition.

## V. APARTMENT SERVICES COMPANY

Next, plaintiff contends that the trial court improperly granted summary disposition in favor of Apartment Services. Plaintiff's theory of liability against Apartment Services was that it had a duty to salt the carport area pursuant to its contact with Woods, and that it owed a separate common-law duty to plaintiff to use ordinary care when it performed that task. The trial court properly granted summary disposition.

It is undisputed that Apartment Services contracted with Woods to remove snow and to salt the parking areas of the condominium complex. Plaintiff was not a party to the contract, and he does not allege that he was a third-party beneficiary of that contract. A duty in tort does not arise when it is based solely on the nonperformance of a contractual duty. *Fultz v Union-Commerce Assoc*, 470 Mich 460, 465-466; 683 NW2d 587 (2004); see also *Loweke*, 489 Mich at 166-167. "[T]he threshold question is whether the defendant owed a duty to the plaintiff that is separate and distinct from the defendant's contractual obligations. If no independent duty exists, no tort action based on a contract will lie." *Fultz*, 470 Mich at 467; see also *Loweke*, 489 Mich at 169 ("*Fultz*'s directive is to determine whether a defendant owes a noncontracting, third-party plaintiff a legal duty apart from the defendant's contractual obligations to another."). Consequently, plaintiff could not base his claim against Apartment Services solely on Apartment Services' failure to perform its contractual duties. Plaintiff was instead required to show that Apartment Services breached a duty of care to plaintiff that was "separate and distinct" from its contractual obligations. *Id.* at 467; see also *Loweke*, 489 Mich at 170-171.

---

[2] Ironically, plaintiff expressly acknowledges in his brief on appeal that the trial court granted summary disposition despite "the fact that trial had not yet even started," and "[plaintiff] had not presented one piece of evidence."

Plaintiff argues that Apartment Services owed him a duty to perform its work distributing salt in the carport areas in a nonnegligent manner, and that it breached that duty by failing to properly salt the area near his car. However, the question of whether Apartment Services complied with any duty to remove snow and distribute salt at the condominium complex, including whether it properly salted underneath the carport, is directly dependent on the Apartment Services' contractual obligations under its contract with Woods. Stated differently, because plaintiff only contends, in effect, that Apartment Services breached its contractual duties to perform ice and snow removal in accordance with the contract, plaintiff has not established that Apartment Services had any duty to nonnegligently salt the areas underneath the carport that was separate and distinct from its contractual obligations to Woods. See *Loweke*, 489 Mich at 166-167.

A defendant can breach a duty separate and distinct from a contractual duty when it creates a new hazard. *Fultz*, 470 Mich at 469. Here, however, there is no evidence that Apartment Services did anything to cause black ice to form next to plaintiff's car. Again, although plaintiff briefly alleged that Apartment Services owed him "a common law duty to exercise reasonable care in its conduct, acts, and omissions," the gravamen of plaintiff's claims against Apartment Services was the following: it "was responsible for snow and ice removal within the parking lot and carport areas adjacent to 29570 Clarita," and it "fail[ed] to remove ice and/or snow from the parking lot adjacent to 29570 Clarita." These allegations are based solely on Apartment Services' nonperformance of its contractual duties and fail to demonstrate that Apartment Services owed plaintiff, and breached, a common-law duty of due care that was separate and distinct from its duties under the contract.

Because there is no evidence that Apartment Services created the condition that caused plaintiff's fall, and plaintiff did not allege or identify the existence of a common-law duty owed by Apartment Services to plaintiff separate and distinct from Apartment Services' contractual obligations to Woods, the trial court did not err in granting Apartment Services' motion for summary disposition.

## VI. ALLIED GUTTER COMPANY, INC.

Lastly, plaintiff argues that the trial court improperly granted summary disposition in favor of Allied because there were genuine issues of material fact as to whether it properly installed the gutters on the carport. Specifically, plaintiff contends that Allied may be liable for his injuries under a theory of negligence because Allied neglected to install gutters "where they were truly needed." We disagree.

It is undisputed that Allied was hired by Kearns as a subcontractor to install the gutters for Woods. Allied performed the work at the direction of Kearns and Woods, and there is no evidence that Allied was consulted about the type of gutters that should be installed or their location. There also is no evidence that Allied failed to install the gutters as directed, or that the installed gutters contributed to the formation of the black ice that caused plaintiff's fall. Because Allied's only involvement was limited to installing the gutters as specified in its subcontract with Kearns, and there is no evidence that Allied failed to install the gutters in accordance with that contract, or that the installed gutters even contributed to the formation of the ice that caused plaintiff's fall, the trial court properly granted Allied's motion for summary disposition.

## VII.  CONCLUSION

The trial court properly granted summary disposition in favor of all defendants.

Affirmed.

/s/ Michael J. Riordan
/s/ Patrick M. Meter
/s/ Karen M. Fort Hood